375 A.2d 105

DANA PERFUMES CORP., Appellant,

v.

The GREATER WILKES–BARRE INDUSTRIAL FUND, INC., Allen, Rodda & Hauck & Associates, Owens-Corning Fiberglas Corporation, and E. W. Roberts Sons, and Tabone & Barbera, and Santo Tabone, Leonard J. Tabone, Emilio Barbera and Frank J. Barbera, t/a Tabone & Barbera.

Appeal of ALLEN, RODDA & HAUCK AND ASSOCIATES (at No. 1563).

Superior Court of Pennsylvania.

Argued Sept. 13, 1976.

Decided June 29, 1977.

Anthony J. Ciotola, Hazelton, with him Louis G. Feldmann, Hazelton, for appellant at No. 1535.

James P. Harris, Jr., Wilkes-Barre, for appellant at No. 1563.

Herbert L. Winkler, Wilkes-Barre, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT, and SPAETH, JJ.

HOFFMAN, Judge:

We believe that appellant's complaint stated a cause of action upon which it could possibly recover against appellee. Therefore, we reverse the lower court's order sustaining appellee's preliminary objections.

On September 19, 1962, Dana Perfumes Corporation, appellant, and the Greater Wilkes-Barre Industrial Fund, Inc., appellee, entered into a contract contemplating the financing, construction, and sale of a manufacturing facility at Crestwood Industrial Park in Wright Township, Luzerne County. The agreement provided, in pertinent part, that appellee would undertake to construct an industrial building upon specified premises and that appellant would agree to purchase the building upon completion. In consideration of these mutual obligations, the parties agreed that appellee, in order to carry out its construction obligations, would make arrangements for financing the project with local banks and the Pennsylvania Industrial Development Authority. Appellee also agreed to the following contractual provision:

"Industrial Fund agrees to sell and convey unto Dana, and Dana agrees to purchase, all that certain piece or parcel of land situate in Wright Township, County of Luzerne and Commonwealth of Pennsylvania, which is more particularly described in Exhibit A annexed hereto and made a part hereof, together with the industrial building to be erected thereon as provided in this agreement, hereinafter called the 'premises.' Industrial Fund will cause to be erected on said premises an industrial building and facilities in accordance with the Plans and Specifications prepared by Allen, Rodda & Hauck, Architects, at a gross construction cost not to exceed $899,000.00. Said Plans and Specifications have been approved and initialed by the parties hereto and are listed on Exhibit E which is annexed hereto and made a part hereof, which Plans and Specifications shall not be changed without the written consent of Dana. Industrial Fund will use its best efforts to have said building completed and ready for occupancy on or before the 1st day of March, 1963."

When the architects certified that the building had been completed in accordance with the plans and specifications agreed upon by the parties, appellant would assume the mortgages arranged by appellee and appellee would convey legal title to appellant.

On September 19, 1962, appellee entered into two other contracts. First, appellee signed an agreement with an architectural firm for the performance of architectural services in connection with the construction of the building. The agreement stated that appellee, as owner of the premises, intended to erect an industrial building for appellant. Appellee also signed an agreement with a general contractor for the construction of the building.

After the building had been completed, appellant entered into possession on May 15, 1963, and commenced making monthly payments on the mortgages to the local banks and to the Pennsylvania Industrial Development Authority. However, the architects refused to certify that the building had been completed in accordance with the plans and specifications because some roof leakage had developed. Appel-

lant, therefore, did not ask for or receive the transfer of legal title from appellee. Appellant did, however, receive a twenty year guarantee from the manufacturer of the roof, Owens-Corning Fiberglas Corporation. Problems with leakage continued and accelerated from year to year. In June, 1969, appellant decided that the defective condition was irreparable; a new roof was needed. Appellee disclaimed responsibility, and appellant replaced the entire roof. Appellant then sued the appellee, the architectural firm, the general contractor, the roofing subcontractor, and Owens-Corning Fiberglas Corporation. Appellee filed preliminary objections asserting that appellant had failed to state a cause of action against it. On March 30, 1976, the lower court sustained appellee's preliminary objections. This appeal followed.

 We believe that the lower court erred in sustaining appellee's preliminary objections. The applicable legal standard is clear: ". . . [W]hen the sustaining of defendants' preliminary objections will result in a denial of plaintiffs' claim, or a dismissal of plaintiffs' suit, preliminary objections should be sustained only in cases which are clear and free from doubt." *Borelli v. Barthel,* 205 Pa.Super. 442, 448, 211 A.2d 11, 14 (1965). Preliminary objections "should be sustained only where it appears with certainty, upon the facts averred, the law will not allow the plaintiff to recover." *International Union of Operating Engineers v. Linesville Construction Co.,* 457 Pa. 220, 224, 322 A.2d 353, 356 (1974). See also *Papieves v. Kelly,* 437 Pa. 373, 263 A.2d 118 (1970). We are not certain that appellant cannot prove that appellee agreed to be responsible for construction of a facility fit for manufacturing purposes. Cf. *Elderkin v. Gaster,* 447 Pa. 118, 288 A.2d 771 (1972). The terms of the contract are not free from doubt; in one clause, appellee agreed to undertake to construct an industrial building in exchange for its ultimate purchase by appellant. In another clause, appellee agreed to "cause to be erected in said premises an industrial building and facilities in accordance with the plans and specifications prepared by [the architec-

tural firm]." Finally, appellee entered into contracts with a general contractor and an architectural firm on the same day that it signed its contract with appellant. These contracts may evidence a recognition by appellee of an obligation to construct the manufacturing facility. Given the opportunity to take depositions and perhaps proceed to trial, appellant may well be able to prove that the parties intended that appellee would be responsible for constructing a building fit for manufacturing purposes. We reverse the lower court's order and reinstate appellant's complaint against appellee.

PRICE, J., concurs in the result.

WATKINS, President Judge, dissents.