419 A.2d 73

Mary Jane "Jaymie" Chicarella DOMINSKI, and Evelyn C. Telesko, administratrix of the estate of Daniel W. Chicarella, Jr., Appellants,

v.

John C. GARRETT and Munyeen C. Garrett.

Superior Court of Pennsylvania.

Argued April 11, 1979.

Filed March 7, 1980.

Anthony J. Seneca, Washington, for appellants.

Frank C. Carroll, Washington, for appellees.

Before PRICE, HESTER and MONTGOMERY, JJ.

PRICE, Judge:

This appeal is brought from an order of the court of common pleas sustaining preliminary objections to plaintiff–appellants' suit in ejectment. The court dismissed the suit and denied appellants the opportunity to file an amended complaint. Appellants claim that the court of common pleas erred procedurally in deciding the preliminary objections by drawing unwarranted factual conclusions and ignoring other factual allegations of the complaint and also erred in its conclusions of law. We agree that the preliminary objections were improperly sustained, and we reverse the order of the court.

Appellants' complaint in ejectment set forth the following facts about this dispute. Daniel W. Chicarella and appellant, Mary Jane Dominiski, owned a mobile home which, through an agreement signed on May 17, 1977, they arranged to sell to appellees. The agreement, which was attached to and incorporated by reference in the complaint, provided that the mobile home would be sold "for the balance due under a Security Agreement . . . account number 794046" which appellees agreed to pay in specified monthly sums to the bank that held the encumbrance. Appellees received an immediate right to possession of the mobile home, and the original owners retained title until the balance due the bank was paid. Appellees had made two monthly payments to the bank pursuant to this agreement when, on June 9, 1977, Daniel Chicarella died. Proceeds

from his credit life insurance policy were paid to the bank and satisfied a substantial portion of the security agreement held by it. A sum of $758.28 from a "physical damage policy" insuring the mobile home was also applied to the debt, thereby further reducing the security agreement. On November 4, 1977, $527.34 remained as the balance due under the security agreement, and this amount was paid to the bank by appellants to satisfy that agreement.

Appellants brought an action in ejectment demanding damages because appellees allegedly had not complied with the terms of the sales agreement and had been in possession of the mobile home without any compensation to appellants. Appellees raised preliminary objections to the complaint averring that "in accord with the pleading of the plaintiffs," they had, in effect, paid the security agreement in compliance with the sales agreement, except for the $527.34 balance, which they agreed to pay to the appellants should the court sustain their objections. They also objected that ejectment was an inappropriate form of proceeding. The court of common pleas treated this preliminary objection as being in the nature of a demurrer on the grounds that appellees had fully paid for the property through the credit life policy, leaving appellants no cause of action.

Initially, we find it incumbent to comment on the form utilized by appellees in their preliminary objections. A more confusing pleading would be difficult to imagine since appellees have specified different grounds for their objections without delineating where one ends and the next begins, and without explicitly designating the particular objection under Pa.R.C.P. No. 1017(b)[1] upon which they rely. Pa.R.C.P. No. 1028, which addresses the form to be used for preliminary objections, was designed to prevent uncertainty as to the particular deficiency of which complaint is made and requires that preliminary objections state specifically

1. Pa.R.C.P. No. 1017(b) limits the available preliminary objections to those raising a question of jurisdiction or venue, seeking to strike off a pleading, requesting a more specific pleading, demurring, or raising defenses such as lack of capacity to sue or pendency of a prior action.

the grounds relied upon. Although appellants have waived any objections to the form of this pleading by failing to raise the issue, we may express our disapproval. Since the course of litigation would not be served by dismissing these preliminary objections, and in accord with Pa.R.C.P. No. 126 which seeks to secure just and speedy determinations of proceedings, we will treat appellees' preliminary objections as a demurrer since we assume that is their intended effect and because that is the manner in which the trial court treated them. Thus, we proceed to an examination of the propriety of the trial court's action in sustaining this demurrer.

■■■ A demurrer admits every well–pleaded material fact set forth in the pleadings to which it is addressed, as well as inferences reasonably deducible therefrom, but it does not admit conclusions of law. *Pennsylvania Liquor Control Board v. Rapistan, Inc.*, 472 Pa. 36, 371 A.2d 178 (1976); *Buchanan v. Brentwood Federal Savings and Loan Association*, 457 Pa. 135, 320 A.2d 117 (1974). For the demurrer to be properly sustained, the plaintiff's complaint must indicate on its face that the claim cannot be sustained. *Gekas v. Shapp*, 469 Pa. 1, 364 A.2d 691 (1976); *Hoffman v. Misericordia Hospital*, 439 Pa. 501, 267 A.2d 867 (1970). It has often been held that a suit should not be dismissed on the basis of preliminary objections unless the case is clear and free from doubt. *E. g., Dana Perfumes Corp. v. Greater Wilkes–Barre Industrial Fund, Inc.*, 248 Pa.Super. 295, 375 A.2d 105 (1977).

> "The test, however, is not whether the applicable law is clear and free from doubt, but whether it is clear and free from doubt from the facts pleaded that the pleader will be unable to prove facts legally sufficient to establish his right to relief. The role of the court in ruling on preliminary objections in the nature of a demurrer is to determine whether or not the facts pleaded are legally sufficient to permit the action to continue. This is so whether the legal determination to be made is relatively simple or

relatively difficult." *Firing v. Kephart*, 466 Pa. 560, 563–64, 353 A.2d 833, 835 (1976).

*See Clevenstein v. Rizzuto*, 439 Pa. 397, 266 A.2d 623 (1970).

The complaint before us sets forth all the payments made to the bank from the time of the creation of the sales agreement until the time when the balance due under the security agreement was satisfied. These payments emanated from appellees, appellants and insurance companies, pursuant to their policies, and no dispute exists as to the fact that they have been made. The point in contention between these parties is a question of law—whether, under the circumstances of the instant case, the appellee–buyers should be given credit under the agreement of sale for payments made through the use of credit life insurance proceeds payable on the life of the deceased seller. This is a difficult question of law, but as was stated by the court in *Firing v. Kephart, supra*, this difficulty should not sway our decision on the demurrer. It is clear that if we were to decide that this payment should be credited to appellees, then appellants' claims must fail because their complaint would then establish on its face that appellees were presently in compliance with the sales agreement. No other facts could be proved that would change this result.

■ Appellants contend that the court may not find that the agreement has been fulfilled because in paragraph twenty–eight of their complaint they have alleged that "the terms of the 'Agreement' have not been complied with by the Defendants," and since a preliminary objection admits all well–pleaded facts, this must be taken as true. The allegation is not one of fact, however, but one of law, and as stated earlier, conclusions of law are not admitted. The "facts" concern the payments that were made in satisfaction of the agreement and their origin, and these have been taken as true. Whether appellees failed to comply with the agreement by neglecting to make payments after the credit life insurance substantially satisfied the security agreement is a conclusion of law to be drawn by the court.

■ Having decided that the issue is ripe for determination by demurrer and that appellants were not deprived of any opportunity to present disputed facts, we will advance to examine whether credit for the life insurance proceeds was properly awarded to appellees by the court of common pleas. This issue is apparently one of first impression in this court, but through application of the doctrine of subrogation, we conclude that the issue was improperly resolved by the court of common pleas and that credit for the payments from these proceeds should be awarded to appellants.

■ When appellees undertook to pay appellants' debt to the creditor–bank, appellees became the principle obligor and appellants became the surety. *Ardesco Oil Co. v. North American Oil and Mining Co.*, 66 Pa. 375 (1871). *See Campbell v. Floyd*, 153 Pa. 84, 25 A. 1033 (1893). Thus, when Daniel Chicarella died and the insurance on his life substantially fulfilled the obligation to the bank, it was as if the surety, appellants, had decided to pay off the obligation. Because of their personal assumption of this liability, appellees would not be discharged from this debt by payment from the surety. Rather than the debt being extinguished, it is transferred to the surety who is subrogated to the rights of the creditor.

■ Subrogation is an equitable doctrine involving the right of legal substitution and may take place with or without contractual agreement between the parties. *First National Bank of Ashley v. Reily*, 165 Pa.Super. 168, 67 A.2d 679 (1949). It is granted as a means of placing the ultimate burden of a debt upon the one who in good conscience ought to pay it, *Topelski v. Universal South Side Autos, Inc.*, 407 Pa. 339, 180 A.2d 414 (1962), and is generally applicable when one pays out of his own funds a debt or obligation that is primarily payable from the funds of another. *Anderson v. Greenville Borough*, 442 Pa. 11, 273 A.2d 512 (1971). The doctrine, however, will not be invoked to protect mere volunteers. *Beck v. Beiter*, 146 Pa.Super. 114, 22 A.2d 90 (1941).

" 'A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay . . . pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.' " *Home Owners' Loan Corp. v. Crouse*, 151 Pa.Super. 259, 262, 30 A.2d 330, 331 (1943), *quoting*, 60 C.J § 27 at 716.

■ Appellants were not intermeddlers because in their relationship with the bank they remained legally liable in connection with this debt. Furthermore, the payment of the credit life insurance proceeds was also involuntary because the right to these proceeds immediately inured to the creditor–bank. Appellants had no control over the use of the funds or the time that they would be received by the bank.

Allowing appellees to receive the benefit of this payment would permit them to be unjustly enriched by an insurance policy to which they had no claim. The sales agreement made no mention of the insurance policy, and although part of the two monthly payments appellees made to the bank was used for the premiums on this insurance, they had no right to change the beneficiary under the policy. They expressly agreed to assume the debt owed to the bank and to satisfy it, and they certainly had no legal claim on appellants to discharge it for them. If appellees wished to have these proceeds applied to their benefit, they should have bargained for it as part of the contract and made this explicit in the written sales agreement.

In the opinion of the Court of Common Pleas of Washington County, the Honorable Charles G. Sweet relies heavily upon a previous opinion of his, *Lapham v. DeTemple*, 60 Wash.Co.Rep. (filed July 6, 1978), in which he attempts to

draw an analogy between the disposition of credit life proceeds and the disposition of fire insurance proceeds dispensed for damage incurred after the insured has entered into an agreement for sale of the property. In the latter situations the insured would have the right to recover from the insurance company, but he would be deemed to hold these proceeds as a constructive trustee for the purchaser despite the fact that the purchaser had made no contribution to the payment of the premiums. *See, e. g., Insurance Company of North America v. Alberstadt*, 383 Pa. 556, 119 A.2d 83 (1956); *Dubin Paper Co. v. Insurance Co. of North America*, 361 Pa. 68, 63 A.2d 85 (1949). We disagree that the reasoning of these cases is applicable to the instant case.

The reasoning in those cases turned upon the passing to the purchaser of the risk of loss due to fire from the time the sales agreement is signed. The theory applied is that the purchaser becomes liable at that time for payment of the full contract price regardless of the destruction of the property, and in allowing him to recover, the court avoids giving the seller the full contract price as well as indemnification for a loss borne by the purchaser. Credit life insurance insures against nonpayment of an obligation due to the death of the insured. The insurance protects the creditor and also the debtor's family by preventing the repossession of the goods should they be unable to continue to make the payments. This type of insurance offers no indemnification to buyers such as appellees for risks they assumed on signing the sales agreement. They bear no loss on the happening of the event insured against, the death of the insured seller, unlike the purchaser who must, because of fire, bear a decrease in value of the property he has bought.

We note that several other states have similarly concluded that proceeds of credit life insurance inure to the insured's estate and not to a third party that has previously agreed to assume the indebtedness absent specific language in the agreement of sale to the contrary. *See Leuning v. Hill*, 79 Wash.2d 396, 486 P.2d 87 (1971); *Toler v. Baldwin County Savings and Loan Association*, 286 Ala. 320, 239 So.2d 751

(1970); *La–Rey, Inc. v. Kowalski*, 433 S.W.2d 530 (Tex.Civ. App.1968); *Hatley v. Johnston*, 265 N.C. 73, 143 S.E.2d 260 (1965); *Betts v. Brown*, 219 Ga. 782, 136 S.E.2d 365 (1964); *Kincaid v. Alderson*, 209 Tenn. 597, 354 S.W.2d 775 (1962).

Since the life insurance proceeds should have been credited to appellants, we conclude that the allegations of their complaint were sufficient to show a cause of action against appellees and that the demurrer cannot be sustained on this ground. We must now proceed to examine appellees' second ground for demurrer, that an action in ejectment will not lie. The court of common pleas found it unnecessary to address this contention because of its resolution of the first issue. We find that a demurrer on this basis also cannot be sustained.

As we stated earlier, the question raised by a demurrer is whether, upon the facts alleged in the complaint, the law says with certainty that the claim has no merit. Appellees apparently claim that ejectment is an improper form of action because it is limited to interests in the nature of real estate and no such interest is shown in the complaint. Although we agree that ejectment will not lie for the recovery of personal property, *Gilberton Coal Co. v. Schuster*, 403 Pa. 226, 169 A.2d 44 (1961); *Hayes v. Treat*, 178 Pa. 310, 35 A. 987 (1896), we do not believe that we can determine with certainty on the facts averred in the complaint that the law would not permit ejectment to lie for recovery of this mobile home. This court has previously determined that a mobile home may be "goods" as that term is defined in the Uniform Commercial Code, Act of April 6, 1953, P.L. 3, §§ 2–105, 2–201, *reenacted*, Act of Oct. 2, 1959, P.L. 1023, § 2, 12A P.S. §§ 2–105, 2–201; *Duffee v. Judson*, 251 Pa.Super. 406, 380 A.2d 843 (1977). This court, however, specifically noted that the facts of *Duffee* did not involve the purchase of a mobile home that was affixed to a foundation in any permanent way, but rather, involved a home that was bought directly from the retail seller and was movable. We lack specific information about the extent of affixation in the instant case and decline to find that appellants would be unable to prove sufficient facts to support this action.

The order of the court of common pleas is reversed and the record is ordered remanded, with leave to appellees to file an answer to the averments of fact within twenty (20) days after notice of this order, as directed by Pa.R.C.P. No. 1028(d).

MONTGOMERY, J., concurs in the result.