## In re ESTATE OF Richard A. DEVOE, Deceased.

### Appeal of James B. Mooney.

Superior Court of Pennsylvania.

Argued March 6, 2013.

Filed Aug. 8, 2013.

Kimberly M. Colonna, Harrisburg, for appellant.

BEFORE: BENDER, SHOGAN and FITZGERALD *, JJ.

OPINION BY SHOGAN, J.:

Appellant, James B. Mooney ("Mooney"), appeals from the order of the Orphans' Court in this matter involving the Estate of Richard A. Devoe ("Decedent"). After careful review, we reverse and remand for proceedings consistent with this Opinion.

We summarize the history of this case as follows. Mooney and Decedent were, at one time, domestic partners. In March of 1998, they purchased a residence at North Second Street in Harrisburg ("the Residence") as joint tenants with the right of survivorship. On September 5, 2008, Decedent secured, through HSBC Mortgage Corporation, a loan in the amount of $132,400.00 ("the HSBC Loan"). The HSBC Loan was secured with a mortgage on the Residence, also dated September 5, 2008, in the amount of $132,400.00.

---

* Former Justice specially assigned to the Superior Court.

The HSBC Loan was used by Decedent to purchase commercial property also situated on North Second Street in Harrisburg ("the Commercial Property"). Mooney had no ownership interest in the Commercial Property. In addition, Decedent was a fifty-percent owner of a company known as Monard Testing, LLC, with Monique Kelly, the other fifty-percent owner. Likewise, Mooney had no ownership interest in Monard Testing. Decedent leased the Commercial Property to Monard Testing. During his lifetime, Decedent made the monthly payments on the HSBC Loan.

Decedent died in October of 2009, at the age of forty-three, when he had an accident on stairs at the Residence. Decedent died intestate and was survived by his parents. In January of 2010, Decedent's brother and his sister were appointed as Co–Administrators of Decedent's estate ("the Estate").

Mooney requested that the Estate pay the HSBC Loan. However, Decedent's sister Corrine Mahla, Co–Administrator, later stated that the Estate was unable to pay the HSBC Loan because it did not have the funds to make the payments. Counsel for the Co–Administrators advised Mooney's attorney that the Estate could not make payments on the HSBC Loan until some of the Estate assets were sold. The Estate contacted HSBC regarding the HSBC Loan and expressed an intent to attend to the loan. The Estate also requested that HSBC forestall any foreclosure proceedings against the Residence. The Estate never made payments on the HSBC Loan. Subsequently, HSBC initiated a foreclosure action against the Residence.

In February of 2010, Mooney filed a Notice of Claim against the Estate for $132,400.00. In September of 2010, Mooney sold the Residence, and paid $138,364.11 to HSBC, in order to satisfy the HSBC Loan and end the foreclosure proceedings. The Estate sold the Commercial Property in October of 2010, and realized proceeds of $95,000.00 on the sale. The Estate did not list the Commercial Property for sale, but instead sold it in a private sale to one of Decedent's friends. The Estate filed a "First and Partial Account" in February of 2011. Mooney filed objections to the First and Partial Account in March of 2011.

The Estate had a business valuation of Monard Testing performed and the valuation given in the report was $25,900.00. In June of 2011, the Estate sold Decedent's interest in Monard Testing, in a private sale, to Decedent's former business partner for $2,000.00. The Estate had not liquidated any other assets, allegedly for sentimental reasons. Decedent's assets included a BMW vehicle and personal property. Also in June of 2011, the Estate filed a "Petition for Adjudication/Statement of Proposed Distribution and First and Partial Account." In July of 2011, Mooney filed objections to the Petition/Account. Mooney also filed a Petition for Surcharge. A hearing on Mooney's objections and petition for surcharge was held over three days, on November 30, 2011, January 3, 2012, and January 5, 2012. After the hearing, and filing of post-hearing briefs, the orphans' court denied Mooney's objections and petition for surcharge on June 11, 2012. This appeal followed.

Mooney presents the following issues for our review:

A. Whether Mooney was entitled to recover on his claim against the Estate under the doctrine of equitable subrogation?

B. Whether Mooney was entitled to recover on his claim against the Estate under the doctrine of unjust enrichment?

C. Whether the Orphans' Court should have addressed the merits of Mooney's other objections and Mooney's petition for surcharge?

Appellant's Brief at 2.[1]

"Our standard of review of the findings of an orphans' court is deferential." *In re Ware,* 814 A.2d 725, 731 (Pa.Super.2002) (citation omitted). "When reviewing a decree entered by the Orphans' Court, this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Rosser,* 821 A.2d 615, 618 (Pa.Super.2003) (citation omitted), *appeal denied,* 574 Pa. 761, 831 A.2d 600 (2003). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *Ware, supra.*

> As an appellate court we can modify an Orphans' Court decree only if the findings upon which the decree rests are unsupported by competent or adequate evidence or if there has been an error of law, an abuse of discretion or a capricious disbelief of competent evidence. The test to be applied is not whether we, the reviewing court, would have reached the same result, but whether a judicial mind, after considering the evidence as a whole, could reasonably have reached the same conclusion.

*In re Gumpher,* 840 A.2d 318, 321 (Pa.Super.2003) (citations omitted).

*Estate of Vernum ex rel. Pratt v. Estate of Vernum ex rel. Wenmoth,* 961 A.2d 181, 184 (Pa.Super.2008).

We have made clear that "[s]ubrogation is an equitable doctrine involving the right of legal substitution and may take place with or without contractual agreement between the parties." *Dominski v. Garrett,* 276 Pa.Super. 18, 419 A.2d 73, 76–77 (1980). Our Supreme Court has explained that equitable subrogation is designed to "place the ultimate burden of a debt on the party who in good conscience should pay it, and, as such, is generally applicable when one party pays out of his own funds a debt that is primarily payable from the funds of another." *Wimer v. Pennsylvania Employees Benefit Trust Fund,* 595 Pa. 627, 939 A.2d 843, 853 (2007).

Mooney first argues that he is entitled to recover on his claim against the Estate under the doctrine of equitable subrogation. He alleges the doctrine applies because he was compelled to pay Decedent's debt in order to protect his own interests in the Residence, and that the mortgage on the Residence made him a surety for the debt. Mooney claims he did not pay the debt as a "volunteer," as determined by the Orphans' Court.

█ The doctrine of equitable subrogation is recognized in Pennsylvania and it allows "a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *First Commonwealth Bank v. Heller,* 863 A.2d 1153, 1156 (Pa.Super.2004) (citation omitted). Our Supreme Court has long explained that "[w]here property of one person can by a proceeding in equity be reached by another as security for a claim on the ground that otherwise the former would be unjustly enriched, an equitable lien arises." *Gla-*

---

**1.** Although counsel for the Estate filed, on November 1, 2012, an application for extension of time to file Appellee's Brief, and an order was entered granting that application on November 2, 2012 directing that a brief be filed by November 30, 2012, an Appellee's brief has not been received by this Court.

*dowski v. Felczak,* 346 Pa. 660, 31 A.2d 718, 720 (1943).

█ We require four criteria to be met for equitable subrogation to apply. *1313466 Ontario, Inc. v. Carr,* 954 A.2d 1, 4 (Pa.Super.2008) (citing *First Commonwealth Bank,* 863 A.2d 1153). These four requirements are:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

*Id.*

█ This Court has stated, "One who is under no legal obligation or liability to pay a debt and who has no interest in, or relation to, the property is a stranger or volunteer with reference to the subject of subrogation." *First Commonwealth Bank,* 863 A.2d at 1159 (citing *Home Owners' Loan Corp. v. Crouse,* 151 Pa.Super. 259, 30 A.2d 330 (1943)). The law is that the doctrine of subrogation cannot be used to protect mere volunteers. *Dominski,* 419 A.2d at 77. In more detail, this Court in *Dominski* explained:

A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay ... pays the debt of another is not entitled to subrogation, the payment in his case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.

*Dominski,* 419 A.2d at 77 (quotation marks omitted).

█ In addition, we are mindful that Black's Law Dictionary includes the following relevant definition of a surety:

One bound with his principal for the payment of a sum of money or for the performance of some duty or promise and who is entitled to be indemnified by some one who ought to have paid or performed if payment or performance be enforced against him.

Black's Law Dictionary, 6th Edition, at 1441. Regarding the action as serving as a surety for the debt of another, we have stated that "[t]he surety need not designate his or her status on the face of the instrument." *First Federal Savings & Loan Association of Pittston v. Reggie,* 376 Pa.Super. 346, 546 A.2d 62, 65 (1988). Thus, under the doctrine of equitable subrogation, " '[a] surety who pays the debt of another is entitled to all the rights of the person he paid to enforce his right to be reimbursed.' " *Jacobs v. Northeastern Corp.,* 416 Pa. 417, 206 A.2d 49, 53 (1965) (quoting *Pearlman v. Reliance Ins. Co.,* 371 U.S. 132, 136–137, 83 S.Ct. 232, 9 L.Ed.2d 190 (1962)).

█ More recently, our Supreme Court has stated that all subrogation claims are substantively equitable in nature. *Employers Insurance of Wausau v. Commonwealth, Department of Transportation,* 581 Pa. 381, 865 A.2d 825, 831 (2005). The doctrines and maxims that form the foundation of equity jurisprudence are applicable to equitable remedies. *United States Fidelity and Guaranty Company v. United Penn Bank,* 362 Pa.Super. 440, 524 A.2d 958, 964 (1987). Thus, considerations of unjust enrichment and unconscionable retention of property come to bear. *Id.* The doctrine of subrogation is not a matter of contract or con-

ventional privity but rather establishes "equitable privity" as an equitable construct. *Employers Insurance of Wausau*, 865 A.2d at 832.

In addressing Mooney's claim for equitable subrogation, the trial court offered the following discussion:

> We note that Mooney focuses his argument in favor of equitable subrogation upon the eventual sale of the Residence. This Court, however, cannot look beyond the circumstances surrounding the creation of the indebtedness, more specifically, the execution of a mortgage against the Residence by both the Decedent and Mooney to secure the underlying loan.[2] The mortgage granted HSBC a security interest in the Residence which, in the event of a default on the loan, permitted HSBC to foreclose upon the property and, through the sale thereof, recover the value of the outstanding debt on the loan. Upon the Decedent's death, Mooney, as a joint tenant with the right of survivorship, became the sole owner of the Residence by operation of law, but title to the Residence remained subject to HSBC's lien. Even if we accept Mooney's position that the looming foreclosure action compelled him to sell the Residence in order to preserve its value, the sale was ultimately necessitated by his choice to support the Decedent's business efforts by, essentially, pledging his interest in the Residence as security for the loan. We find, therefore, that Mooney acted as a volunteer when he executed the mortgage in favor of HSBC and, consequently, his equitable subrogation claim must fail.

> [2] Mooney does not dispute that he agreed to the execution of the mortgage against the Residence.

Trial Court Opinion, 6/11/12, at 3–4.

Upon careful review of the record, we are compelled to disagree with the conclu-sion reached by the trial court in its refusal to apply the doctrine of equitable subrogation. Rather, we are constrained to conclude that the trial court erred in finding that Mooney could not be equitably subrogated as a surety who provided financing for a defaulting debtor, Decedent and the Estate. As *Dominski* recognized, the doctrine of equitable subrogation does not protect mere volunteers. It applies only to one who makes a payment pursuant to a legal or moral obligation to pay. In the present case, it is undisputed that the Estate defaulted on the HSBC Loan, issued solely to Decedent, and HSBC initiated foreclosure proceedings on the Residence, which was owned by Mooney. Mooney testified that he was compelled to sell the Residence in order to stop the foreclosure proceedings on the Residence, protect his own personal credit, and satisfy the HSBC Loan. Specifically, Mooney offered the following testimony regarding his decision to sell the Residence:

Q. What was it that caused you to come to that decision?

A. I had hoped the matter would be resolved before I sold the property, but the research that I did indicated that the foreclosure was going to continue. Listing the house was an action on my part that the HSBC agreed they would stall foreclosure proceedings if I listed the house for sale. So I did. That did not stop the foreclosure proceedings. They continued. And I got to what I perceived to be very close to the end point that they would have scheduled a sheriff's auction. And they regularly were sending somebody to the house and leaving notices on the door in increasing quantity.

Q. Why is it that you weren't willing to let the property go into foreclosure?

A. Having my credit ruined for a loan that somebody else took would have been a hard pill to swallow, number one.

Number two, I understand that at an auction they potentially would sell it for a minimum to cover their cost, which meant other equity I would lose if I allowed that to happen. Quite frankly, I've never defaulted on a loan in my life. So it's just not of my nature to allow my credit to be destroyed by something like this, whether I was the party that took out the loan or not. So it seemed like the appropriate action.

N.T., 11/30/11, at 46–47.

Q. Did you eventually get HSBC to mark—to mark the mortgage against your—the residence satisfied after the sale?

A. Yes.

*Id.* at 48–49.

■ Thus, due to the Estate's refusal to pay the HSBC Loan, Mooney had a legal duty to compensate HSBC with proceeds from the sale of the Residence, by virtue of the mortgage granted upon the Residence. It makes no difference that Mooney's legal duty was triggered following the default by Decedent and the Estate. The law will not penalize a surety for good faith conduct that resulted in a party being completely and promptly paid. *Dominski,* 419 A.2d at 76–77. Further, allowing subrogation will not cause injustice to the rights of others. Accordingly, we conclude that the trial court abused its discretion in reaching a contrary conclusion with regard to this issue. Hence, we reverse the order of the orphans' court.

With regard to Mooney's second issue, that he is entitled to recover on his claim against the Estate under the doctrine of unjust enrichment, we need not address this contention in light of our determination concerning Mooney's first issue presented on appeal.

In his third issue on appeal, Mooney argues that he is a legitimate creditor of the Estate and his other objections to the Estate Account should have also been granted. Mooney further alleges that the Co–Administrators did not administer the Estate properly, that the proposed commissions to the Co–Administrators were excessive, and that the Estate's attorneys' fees were excessive.

In refusing to address Mooney's contentions in this regard, the trial court made the following conclusion:

Accordingly, having determined that Mooney does not have a legitimate claim for distribution from the Decedent's Estate, we need not address his remaining objections or his Petition for Surcharge as he is no longer a party in interest authorized to bring such challenges.

Trial Court Opinion, 6/11/12, at 5.

However, as we discussed previously in this Opinion, Mooney does have a legitimate claim for equitable subrogation against the Estate. Therefore, upon remand, we direct the orphans' court to address the additional objections and request for surcharge, which were presented to the orphans' court by Mooney.

Order reversed. Case remanded for proceedings consistent with this Opinion. Jurisdiction relinquished.