J-A28037-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN THE MATTER OF HELEN HARPER, AN ALLEGED INCAPACITATED PERSON | : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: ROBERT J. HARPER | : : : : | |
| | : | No. 2570 EDA 2016 |

Appeal from the Decree July 26, 2016
In the Court of Common Pleas of Delaware County Orphans' Court at
No(s): 597-2015

BEFORE: GANTMAN, P.J., PANELLA, J., and DUBOW, J.

MEMORANDUM BY DUBOW, J.: **FILED DECEMBER 14, 2017**

Appellant, Robert J. Harper, Co-Guardian of the Person of Helen Harper, appeals from the July 26, 2016 Order entered in the Delaware County Court of Common Pleas granting the Petition to Sell Real Estate/Use Proceeds to Satisfy Debts filed by Jacquelyn Goffney, Esquire, Co-Guardian of the Estate of Helen Harper. After review, we affirm.

Helen Harper is a ninety-nine year old woman residing at Wallingford Nursing Home. On November 25, 2015, following a hearing, the court adjudged Ms. Harper incapacitated and appointed Jacquelyn Goffney, Esquire, and Dana Breslin, Esquire, as her Co-Guardians. Appellant, her son, appealed the adjudication of incapacity and appointment of guardianship, which this Court affirmed on January 5, 2017. *Matter of Harper*, No. 91 EDA 2016 (Pa. Super. filed January 5, 2017) (unpublished memorandum).

During their tenure as Co-Guardians of the Estate, Attorney Goffney and Attorney Breslin determined that Ms. Harper had accrued $180,000 in unsecured debts that she could not pay with the liquid assets in her estate. The Co-Guardians further determined that Ms. Harper's debts were mainly due to the mismanagement of her assets by Appellant, acting as agent under a power of attorney.

Although Ms. Harper has very little in the way of liquid assets, she owns several tracts of land including a commercial property at 611 N. Swarthmore Avenue, Ridley Park (the "Property"). Based upon a substantial amount of unpaid taxes, the sheriff had scheduled a proposed upset tax sale of all of Ms. Harper's properties for September 2016. In response, Attorney Goffney sought to sell a portion of the Property to pay off Ms. Harper's outstanding debts and to ensure that she did not lose all of her properties to tax foreclosure proceedings. The Property contained a lumberyard, a run-down garage, and a single family home that was unsafe to occupy and required demolition.

The Co-Guardians obtained an agreement of sale of the Property for $320,000 as-is, including indemnification on any environmental issues and requiring the buyer to perform their own environmental remediation and removal of debris from the premises. Accordingly, on June 1, 2016, Ms. Goffney filed a Petition to Sell Real Estate/Use Proceeds to Satisfy Debts ("Petition"). Appellant objected to the Petition, alleging that the sale price

was too low, that Attorney Goffney inadequately advertised the sale, and that a sale by auction would bring a higher sales price.

On July 26, 2016, the court held a hearing on the Petition. Ms. Goffney presented: 1) the testimony of Anthony Tartaglia, Ridley Park Brorough Code Enforcement Office; 2) a commercial appraisal completed by Kevin B. Flynn concluding that the fair market value of the Property was $310,000; and 3) a letter affidavit from Donald J. Grimes, a Pennsylvania Licensed Real Estate Sales Person, who concluded that the cash sale price offered for the Property is reasonable. Following the hearing, the court granted the Petition, approving the sale of the Property for $320,000 in order to pay Ms. Harper's outstanding debts and taxes. Appellant timely appealed.[1, 2]

Appellant raises the following two issues on appeal:

1. Whether the lower court abused its discretion and committed error of law claiming jurisdiction over Helen Harper in violation of 20 Pa.C.S.[§] 5511(a) citing "service shall be no less than 20 days in advance of the hearing[?]"

2. Whether the lower court erred in granting the sale of 611 Swarthmore Avenue, Ridley Park, PA[] 19078 consisting of

---

[1] The court did not order Appellant to file a Pa.R.A.P. 1925(b) Statement.

[2] On August 23, 2016, Attorney Goffney filed a Petition to Allow Sale of Real Estate to Proceed and Request for Postage of Appeal Bond. On September 12, 2016, the court granted the Petition and Ordered Appellant to post an appeal bond in the amount of $600,000 within five days. Appellant failed to post an appeal bond, and the Co-Guardians subsequently sold the Property for the amount approved by the orphans' court.

> 1.3 acres of commercial land, 9,200 square foot mason[]ry commercial building, 3 bedroom frame residence, two car garage[,] and substantial hardware and building material inventory for $320,000 against the best interest of Helen Harper.

Appellant's Brief at 5.

In his first issue, Appellant argues that the orphans' court lacked jurisdiction over the matter of Helen Harper's incapacity in the first instance because the court held a hearing on Ms. Harper's incapacity fewer than twenty days after providing her notice of the November 9, 2015 hearing, and because Ms. Harper did not have counsel at the hearing. *Id.* at 11. Appellant alleges that the Affidavit of Service of the Petition, which the Petitioner submitted as evidence to the orphans' court, was defective. *Id.* Appellant avers that the Affidavit of Service states that Ms. Harper received notice of the Petition at her home on October 27, 2015, but that Ms. Harper had been admitted to Wallingford Nursing Home on October 23, 2015. Thus, Appellant concludes Ms. Harper could not possibly have received personal service of the Petition at her home 4 days earlier. *Id.*

In its prior Rule 1925(a) Opinion, the orphans' court addressed the claims Appellant raises in his first issue in this appeal. First, with respect to Appellant's averment that the orphans' court did not provide Ms. Harper with

statutory notice of the hearing regarding her capacity,[3] thus, depriving the court of jurisdiction over this matter, the court specifically found that,

> Helen Harper was properly served with notice of the Petition and the hearings in this matter as required by 20 Pa.C.S. § 5511(a). At the initial hearing on November 9, 2015, Robert George, Esquire, counsel for [the Delaware County Office of Services for the Aging], submitted into evidence an Affidavit of Service which was notarized and signed by Jane Ervin who attested that she had "personally served, read to, explained and left a copy of the CITATION WITH IMPORTANT NOTICE, Preliminary Decree, and accompanying Petition" upon Helen Harper.

Orphans' Ct. Op., 3/10/16, at 6-7.

Appellant bases his argument on the court's lack of jurisdiction over Ms. Harper on the alleged defectiveness and invalidity of the Affidavit of Service. The Record before this Court, however, does not contain a copy of this document, nor does it contain a transcript from the November 9, 2015 hearing, at which Appellant may have raised the issue of service of the Petition. Appellant had the obligation to ensure that the certified record "contains all of the materials necessary for the reviewing court to perform its duty." ***Commonwealth v. Bongiorno***, 905 A.2d 998, 1000 (Pa. Super. 2006) (citation omitted). Owing to the absence in the record of any evidence supporting this claim, we are unable to entertain this issue on

---

[3] 20 Pa.C.S. § 5511(a) requires that a petitioner personally serve an alleged incapacitated person with the Petition for Adjudication of Incapacity no less than 20 days in advance of the hearing on the Petition.

appeal. ***See Commonwealth v. Kleinicke***, 895 A.2d 562, 575 (Pa. Super. 2006).

Insofar as Appellant also baldly claims that Ms. Harper was prejudiced when the court held the November 9, 2015 hearing without providing her with counsel, the orphans' court opined as follows:

> In light of the absence of Helen Harper at the November 9, 2015 hearing, the significance of the allegations regarding Helen Harper's condition and finances, and John Nilan, Esquire, appearing as opposing counsel on behalf of [Appellant], the [c]ourt appointed Jacquelyn Goffney, Esquire[,] Guardian *Ad Litem* on behalf of Helen Harper and scheduled this matter for an evidentiary hearing to be held on November 23, 2015 . . . [T]he court proactively appointed a Guardian *Ad Litem* for Helen Harper in order to ensure that the rights and best interests of Helen Harper were protected throughout this entire process.

Orphans' Ct. Op, 3/10/16, at 6-7.

Following our review, we conclude that the orphans' court was plainly aware of the gravity of the issue before it, and the importance of protecting Ms. Harper's rights. Contrary to Appellant's unsupported claim, the court acted to ensure that, with the appointment of a Guardian *Ad Litem*, Ms. Harper had every possible protection against prejudice. Thus, Appellant's first issue fails.

In his second issue, Appellant alleges that the trial court erred in approving the sale of the Property for below fair market value, and that its decision was arbitrary and against the weight of the evidence. Appellant's Brief at 12, 15. He argues that the orphans' court erred in characterizing the inventory on the Property as "trash," and claims that Attorney Goffney

- 6 -

inadequately advertised the sale. *Id.* at 13. Essentially, Appellant attempts to re-litigate on appeal the issues he raised at the hearing on the Petition.

Our standard of review of the findings of the orphans' court is deferential. *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002). When reviewing a decree entered by the orphans' court, "this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013) (citation and quotation marks omitted). "Because the [o]rphans' [c]ourt sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016), *appeal denied*, 145 A.3d 166 (Pa. 2016) (citation and quotation omitted).

The Honorable Chad F. Kenney has authored a comprehensive, thorough, and well-reasoned Opinion addressing the reasons supporting the court's conclusion that the sale of the Property was in the best interests of Ms. Harper, with references to the evidence and the testimony presented at the hearing on the Petition and relevant case law. After a review of the arguments of the parties and the record, we affirm on the basis of that Opinion, which found that Attorney Goffney presented clear and convincing evidence that Ms. Harper's financial interest is best served by the sale of the Property at the confirmed fair market value of $320,000. *See* Orphans' Ct. Op., 2/13/17 at 2-5.

- 7 -

Order affirmed.  Jurisdiction relinquished.

Judge Panella joins the memorandum.

President Judge Gantman concurs in the result.
Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 12/14/2017

IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
ORPHANS' COURT DIVISION

In re: Helen Harper,      :  No. 597 of 2015
An Incapacitated Person     :

             :

             :

             :

## OPINION

This matter came before the Court on a Petition to Sell Real Estate/Use Proceeds to Satisfy Debts. After a full evidentiary hearing on July 26, 2016 regarding this current Petition at which all interested parties had an opportunity to submit evidence and elicit testimony, the Court entered a Decree allowing the Co-Guardians of the Estate to sell one of the properties owned by Helen Harper at the price of $320,000 in order to pay for currently outstanding debts and taxes. Robert Harper filed a Notice of Appeal of the Court's Final Decree on July 26, 2016. This Opinion follows and, for all of the forthcoming reasons, the Final Decree entered by the Court should be affirmed.

## BACKGROUND

Helen Harper is a ninety-nine (99) year old individual residing at Wallingford Nursing Home. On November 25, 2015, Helen Harper was adjudged Incapacitated and Jacquelyn Goffney, Esquire, the Petitioner on this matter, was appointed Co-Guardian of the Estate with Dana Breslin, Esquire (hereinafter jointly referred to as Co-Guardians of the Estate) and Co-Guardian of the Person. This adjudication of incapacity and appointment of guardianship was subsequently appealed by Robert Harper, the son and appointed Co-Guardian of the Person of Helen Harper, and subsequently affirmed by the Superior Court on January 7, 2017.[1]

During their tenure as Co-Guardians of the Estate, it was determined that Helen Harper had accrued $180,000.00 in secured and unsecured debts which was unable to be paid with the

---

[1] *Matter of Harper*, No. 91 EDA 2016 (Pa. Super. 2017).

1

liquid assets of her estate. This excessive debt was determined to be mainly due to the mismanagement of Helen Harper's assets by Robert Harper, her son, acting as agent under a power of attorney. Although having no liquid assets, Helen Harper owns several tracts of land, including a commercial property located at 611 N Swarthmore Ave, Ridley Park. Based upon a substantial amount of unpaid taxes, all of the properties held by Helen Harper were subject to a proposed upset tax sale scheduled for September 2016. Pursuant to the need of the Co-Guardians of the Estate to pay off these outstanding debts and to ensure that all of the properties owned by Helen Harper would not be lost to tax foreclosure proceedings, they sought to sell a portion of 611 N. Swarthmore Avenue, Ridley Park, PA located north of Swarthmore Avenue (hereinafter the Real Property) containing a lumberyard, garage, and single-family home.

The Petitioner obtained an Agreement of Sale at a price of $320,000.00 as-is, which includes indemnification on any environmental issues and requiring the buyer to perform their own environmental clean-up and removal of debris from the premises. The buyer would further demolish the rundown building and residential home located on the Real Property which are not up to code and unsafe to occupy. Subsequently, court approval was sought for the private sale of the Real Property and Robert Harper objected. Mr. Harper asserts that the sales price is too low, the sale was not properly advertised, and that sale by auction would produce a higher sales price.

## DISCUSSION

Approval of a private sale of an incompetent's interest in real estate will be granted when the court determines that the proposed sale is in the best interest of the incapacitated individual. *In re Pelechacz' Estate*, 116 A.2d 117 (Pa. Super. 1955). The Orphans' Court Rules set forth differing requirements for a petition of private sale of real property to allow the court to properly determine the best interest of an incapacitated person. Pa.O.C. Rule 5.11. Under these rules, a Petitioner must provide, *inter alia*, two (2) affidavits attesting to the value of the property from competent individuals knowledgeable about the real estate in the area and that have inspected the property intending to be sold at private sale. Pa.O.C. Rule 5.11(b). These

2

affidavits are provided so the court can adequately confirm that the price obtained at private sale is the fair market value of the premises.

The Petitioner has met all of the criteria set forth in Pa.O.C.Rule 5.11, including an appraisal report and an affidavit of value which indicate that the fair market value for the Real Property is approximately $310,000 and $320,000, respectively. The appraisal report prepared by Kevin B. Flynn, MAI, CCIM, a certified general appraisal and real estate broker, determined the value of the Real Property using the industry approved sales comparison approach. Using comparable commercial properties and adjusting these prices for the condition and location of the Real Property, Mr. Flynn determined the fair market value to be $310,000.00 and that the economic life of the structures on the Real Property contribute no value to the underlying land. This fair market value is $10,000 less than the sales price obtained by the Petitioner in as-is condition.

Testimony from Anthony Tartaglia, a building code official with thirty-one (31) years' experience for various boroughs, indicates that no one could safely occupy the lumberyard building and that the residential home was uninhabitable. Mr. Tartaglia took numerous pictures of the Real Property showing substantial water damage and deterioration to both the building and single-family home. Photographic evidence shows that the Real Property is in shambles and contains numerous inoperative rundown cars and trucks which act as attractive nuisances. These pictures and testimony further establish that the contents of the building had little to no value and most items were not in any condition to be sold, but were merely trash. The building inspector indicated that Robert Harper had received notices of these violations in prior years, but Mr. Harper never remedied these substantial issues and merely allowed this property to remain in this condition for the past three (3) years.

Robert Harper asserts he believes that the buildings on the Real Property could be rehabbed and the house could be rented for $1,500/mo. and the building could be rented for $10,000/mo. instead of demolishing the buildings. Mr. Harper also states that the contents of the items within the buildings would essentially cover the entire proposed sales price. However, he did not provide any testimony or evidence of how he obtained these figures or their accuracy. The record is devoid of any estimates presented by Mr. Harper to indicate the

3

cost of repairs to the Real Property, its rental value, or the resale price of the items contained in the building.

Mr. Harper further stated that he believes that the proposed sales price of the Real Property is too low. To support this claim Mr. Harper submitted online print-offs from Trend MLS, a real estate listing website, for commercial properties in Ridley Township and Eddystone Borough identifying their sales prices at $1,000,000 and $1,400,000. Mr. Harper did not indicate how these properties were comparable to the Real Property in question nor did he indicate any experience he had in appraising market values. Mr. Harper also provided hearsay testimony that a neighboring owner of a 50 ft. x 175 ft. commercial property was intending to put his property on the market for $210,000, which is less than one-fourth (1/4) of the size of the Real Property. Mr. Harper did not obtain any actual appraisals for the sales price, but relied mainly on his own speculation of price for the Real Property. Furthermore, the pictures of the Real Property directly contradict the testimony of Robert Harper in his assessment of the property and contents therein.

The Petitioner has established that the sales price of $320,000 is consistent with the fair market value for the Real Property, the property has not been maintained, and the structures on the Real Property are in disrepair. Without this private sale Helen Harper is unable to pay off the taxes owed on her remaining properties and risks losing them at tax sale. In retaining the Real Property, Helen Harper also subjects herself to potential lawsuits stemming from the attractive nuisances currently present on the property and accumulates additional debt. Robert Harper has not provided any evidence or testimony, except for his own assumptions, which would establish that it is in the best financial interest of Helen Harper to renovate the property and attempt to sell it at auction. It has also been shown that Helen Harper has no liquid assets to make the necessary repairs to the property needed to bring the building and residential home up to code and increase the sales price.

## CONCLUSION

Based upon the record presented in this matter, there is clear and convincing evidence that the financial interest of Helen Harper, an incapacitated individual, is best served by the

4

private sale of a portion of 611 N. Swarthmore Avenue, Ridley Park, PA located north of Swarthmore Avenue at the confirmed fair market value of $320,000. It has further been established that the proper procedure and applicable law was applied to determine the best interest of Helen Harper. Accordingly, the Court's July 26, 2016 Final Decree should be affirmed.

BY THE COURT:

DATED: 2-13-2017

CHAD F. KENNEY
President Judge

5