FIRST COMMONWEALTH
BANK, Appellee

v.

Catharine R. HELLER.

Appeal of Ameriquest Mortgage
Company.

Superior Court of Pennsylvania.

Submitted Sept. 7, 2004.
Filed Nov. 16, 2004.
Reargument Denied Jan. 21, 2005.

William J. Levant, Blue Bell, for appellant.

Catharine R. Heller, appellee, Pro Se.

Richard B. Tucker, III and Christopher J. Richardson, Pittsburgh, for First Commonwealth.

Before: JOYCE, TAMILIA and POPOVICH, JJ.

TAMILIA, J.:

¶ 1 Ameriquest Mortgage Company appeals the January 30, 2004 Order denying and dismissing its petition to intervene and vacating the stay of a sheriff's sale in this mortgage foreclosure action.

¶ 2 The factual history reveals the following loans were extended to defendant Catharine Heller,[1] all secured by mortgages on a piece of real property titled in Heller's name. In March 1990, Central Bank, the predecessor to plaintiff/appellee First Commonwealth Bank, extended a $73,170 loan. In February 1995, Mid–State Bank and Trust Company (hereinafter "Mid–State") extended a $15,000 line of credit. In November 1997, First Commonwealth Bank extended a $43,588.25 loan. In April 2000, First Commonwealth Bank extended a $76,680.26 loan, proceeds of which were used to pay off the bank's 1997 loan. In August 2001, appellant extended a $119,000 loan, at which time public records would have revealed the following three mortgages on the property:

1. Central Bank's 1990 mortgage
2. Mid–State's 1995 mortgage
3. First Commonwealth Bank's 2000 mortgage

Appellant concedes the existence of these three mortgages, but admits its title search did not reveal the existence of the 2000 mortgage, which it presumes was due

to searcher error. Appellant's brief at 7. The proceeds of appellant's 2001 loan were used to pay off Central Bank's 1990 loan and Mid–State's 1995 line of credit. The Mid–State line of credit remained open, however, and so its mortgage on the property remained. Accordingly, the following mortgages remained of record:

1. Mid–State's 1995 mortgage
2. First Commonwealth Bank's 2000 mortgage
3. Appellant Ameriquest Mortgage Company's 2001 mortgage

¶ 3 On March 5, 2003, First Commonwealth Bank filed the instant foreclosure action based upon its April 2000 loan. Two months later, on June 10, 2003, appellant filed the underlying petition to intervene in which it sought to assert a right to equitable subrogation as to Central Bank's 1990 mortgage and Mid–State's 1995 mortgage.[2] On August 22, 2003, default judgment was entered against Heller and shortly thereafter a writ of execution was issued to the Sheriff of Blair County. On September 29, 2003, appellant filed a petition to stay the sheriff's sale in which it also incorporated and restated its petition to intervene. The court granted the stay on October 22, 2003.

¶ 4 On January 27, 2004, a hearing was held on appellant's petition to intervene and on January 30, 2004, the court entered an Order denying appellant's petition and vacating the stay of the sheriff's sale. Subsequently, the court entered an Opinion in which it explained it had denied appellant's request for intervention since appellant had not demonstrated the existence of the prerequisites necessary for invoking the remedy of equitable sub-

---

1. Heller did not file a brief with this Court.

2. The trial court's March 18, 2004 Opinion indicates that on September 30, 2003, appel-

lant petitioned for leave to intervene. Trial Court Opinion, Peoples, J., 3/18/04, at 2. The docket reflects appellant first filed its petition to intervene on June 10, 2003.

rogation. Appellant's "problem," the court explained, was the result of its own negligence in failing to discover First Commonwealth Bank's mortgage, to which appellant's mortgage could only be secondary. Trial Court Opinion, Peoples, J., 3/18/04, at 4.

¶ 5 In this timely appeal, appellant raises the following questions for our review:

1. Did the trial court abuse its discretion or commit an error of law by denying the proposed intervenor's petition for leave to intervene in this foreclosure action, to assert a claim of equitable subrogation against the plaintiff?

2. Did the trial court abuse its discretion or commit an error of law by dissolving the temporary stay of execution it had previously entered, which would have allowed the proposed intervenor to litigate the separate action to quiet title that it filed against the plaintiff in the trial court at number 03–GN–3844?

3. Was the trial court's stated basis for denying leave to intervene and dissolving the stay both supported by the record and appropriate under the circumstances?

Appellant's brief at 4.

As a general rule, an appeal will not lie from an order denying intervention, because such an order is not a final determination of the claim made by the would-be intervenor. However, in some cases, the order denying intervention has the practical effect of denying relief to which the intervenor is entitled and which he can obtain in no other way. Such an order will be deemed final, and an appeal therefrom will be allowed. In order to determine the appealability of an order denying intervention, therefore, one must examine the ramifications of the order to determine whether it constitutes a practical denial of relief to which the petitioner for intervention is entitled and which he can obtain in no other way.

Often, it is necessary to examine the merits of an appellant's petition in order to determine whether the court's order results in a practical denial of relief to which the appellant is entitled but which can be secured in no other way.

*Luiziaga v. Psolka*, 432 Pa.Super. 26, 637 A.2d 645, 646–647 (1994) (citations and quotations omitted); *see also* Pa.R.A.P. 341, note (providing an Order denying a party the right to intervene is no longer appealable as a final Order). The trial court essentially concluded appellant was not a party entitled to relief. If correct, the Order was not final as to appellant and therefore not appealable and we are required to quash the appeal. To determine whether intervention was properly denied, we must examine the merits of appellant's petition to intervene.

¶ 6 It is well established that a question of intervention is a matter within the sound discretion of the trial court and absent a manifest abuse of such discretion, its exercise will not be disturbed on review. *Wilson v. State Farm Mut. Auto. Ins. Co.*, 512 Pa. 486, 492, 517 A.2d 944, 947 (1986).

¶ 7 Appellant asserts it should have been permitted to intervene pursuant to Pennsylvania Rule of Civil Procedure 2327, Who may intervene, which provides in pertinent part:

At any time during the pendency of an action, a person not a party shall be permitted to intervene therein, subject to these rules, if

. . .

(4) the determination of such action may affect any legally enforceable interest of such person whether or not such person may be bound by a judgment in the action.

Pa.R.C.P. 2327.[3] Appellant bases this allegation, not only on the undisputed fact that appellant holds a mortgage on the property securing its 2001 loan, but also on its alleged right to equitable subrogation as to Central Bank's 1990 mortgage and Mid-State's 1995 mortgage since proceeds from appellant's loan to the debtor were used to pay those debts.

¶ 8 Generally, the priority of a lien is determined by the date on which it was recorded. *See* 42 Pa.C.S.A. § 8141[4] and 21 P.S. § 622.[5] The doctrine of equitable subrogation is recognized in Pennsylvania, *see Public Service Mutual Ins. Co. v. Kidder–Friedman,* 743 A.2d 485, 488 (Pa.Super.1999), *quoting Molitoris v. Woods,* 422 Pa.Super. 1, 618 A.2d 985, 989 (1992), and equitable subrogation is a widely-recognized exception to the "first in time" rule. *See* Restatement (Third) of Property (Mortgages) § 7.6(a); *see also e.g., Eastern Savings Bank, FSB v. Pappas,* 829 A.2d 953, 956–957 (D.C.App.2003); *East Boston Sav. Bank v. Ogan,* 428 Mass. 327, 701 N.E.2d 331, 334 (1998); *Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.,* 208 Ariz. 478, 95 P.3d 542, 544 (Ct.App.2004).[6] Appellant relies heavily upon the Restatement (Third) of Property, Mortgages, § 7.6, Subrogation, (a), which addresses the issue of equitable subrogation in the context of a mortgage and explains:

> [o]ne who fully performs an obligation of another, secured by a mortgage, becomes by subrogation the owner of the obligation and the mortgage to the extent necessary to prevent unjust enrichment. Even though the performance would otherwise discharge the obligation and the mortgage, they are preserved and the mortgage retains its priority in the hands of the subrogee.

Put more succinctly, equitable subrogation permits "a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." *Houston v. Bank of America Fed. Sav. Bank,* 119 Nev. 485, 78 P.3d 71, 73 (2003), *citing Mort v. U.S.,* 86 F.3d 890 (9th Cir.1996). "The great majority of case law holds that one who pays the mortgage of another and takes a new mortgage as security will be subrogated to the rights of the first mortgagee as against

---

3. Appellant further alleges that none of the circumstances enumerated in Rule 2329, **Action of Court on Petition**, are present such that the trial court had a basis upon which to deny its petition. Rule 2329 provides:

> Upon the filing of the petition and after hearing, of which due notice shall be given to all parties, the court, if the allegations of the petition have been established and are found to be sufficient, shall enter an order allowing intervention; but an application for intervention may be refused, if
> (1) the claim or defense of the petitioner is not in subordination to and in recognition of the propriety of the action; or
> (2) the interest of the petitioner is already adequately represented; or
> (3) the petitioner has unduly delayed in making application for intervention or the intervention will unduly delay, embarrass or prejudice the trial or the adjudication of the rights of the parties.

Pa.R.C.P. 2329.

4. 42 Pa.C.S.A. § 8141, **Time from which liens have priority**, provides in pertinent part:

> [l]iens against real property shall have priority over each other on the following basis:
> . . .
> (2) . . . mortgages [other than purchase money mortgages] . . ., from the time they are left for record.

5. 21 P.S. § 622, **Priority according to date of recording**, provides in pertinent part "mortgages . . . shall have priority according to the date of recording . . . ."

6. We have looked to the law of our sister states regarding the application of the doctrine of equitable subrogation in the context of mortgages since there is a dearth of Pennsylvania case law on the subject.

any intervening lienholder." *Eastern Savings Bank, supra,* at 957, *citing G.E. Capital Mortgage Servs., Inc. v. Levenson,* 338 Md. 227, 657 A.2d 1170, 1175 (1995). The purpose of this doctrine, according to the Restatement, is to prevent the unearned windfall of one, i.e., the intervening lien holder in the form of an advancement in priority, at the expense of another, i.e., the new mortgagee who paid the previous debt. *See* Restatement § 7.6, comment a; *Eastern Savings Bank, FSB, supra* at 960.

¶ 9 The Restatement further explains:

A mortgage debtor may ask another person to discharge the debt. In some circumstances, the payor who does so is warranted in receiving, by subrogation, the benefit and priority of the mortgage paid. The most common context for this sort of subrogation is the "refinancing" of a mortgage loan; that is, the payment of a loan with the proceeds of another loan.

. . .

Perhaps the case occurring most frequently is that in which the payor is actually given a mortgage on the real estate, but in the absence of subrogation it would be subordinate to some intervening interest, such as a junior lien. Here subrogation is entirely appropri-ate, and by virtue of it the payor has the priority of the original mortgage that was discharged. This priority is often of critical importance, since it will place the payor's security in a position superior to intervening liens and other interests in the real estate. The holders of such intervening interests can hardly complain of this result, for it does not harm them; their position is not materially prejudiced, but is simply unchanged.

Restatement (Third) of Property, Mortgages, 7.6, comment e. The Restatement requires, as the above hints and the comments further clarify, that application of the doctrine will not materially prejudice the rights of the intervening lien holders. If it does, then according to the Restatement, the doctrine is not applied. *See id.,* comment e.[7]

¶ 10 The Restatement further views as irrelevant whether the mortgagee had actual or constructive notice of the intervening lien. According to the Restatement, a mortgagee is entitled to subrogation provided that it reasonably expected to receive the security and priority of the lien it paid, and provided subrogation will not materially prejudice the rights of the intervening lien holders. *See* Restatement § 7.6, comment e.[8] While we find the logic

---

7. With regard to the issue of prejudice to the intervening lien holders, it is important to note that "[t]he payor is subrogated only to the extent that the funds disbursed are actually applied toward payment of the prior lien. There is no right of subrogation with respect to any excess funds." Restatement (Third) of Property, Mortgages, § 7.6, comment e.

8. Since equitable subrogation is an equitable remedy, courts must determine whether circumstances merit application of the doctrine. *See Pennsylvania Mfrs.' Ass'n Ins. Co. v. Wolfe,* 534 Pa. 68, 74, 626 A.2d 522, 525 (1993) (stating that cases resolved on subrogation principles must be consistent with standards of fairness and equity); *Armstrong School Dist. v. Armstrong Educ. Ass'n,* 528 Pa. 170, 175, 595 A.2d 1139, 1142, n. 2 (1991) (stating courts sitting in equity fashion remedies based upon considerations of fairness, justness, and right dealing in a particular situation.) In doing so, courts take at least three different approaches in applying the doctrine. The first approach, followed by a majority of states, holds that actual knowledge of an intervening lien precludes application of the doctrine but constructive knowledge does not. Restatement § 7.6, comment e; *Houston v. Bank of America Fed. Sav. Bank,* 119 Nev. 485, 78 P.3d 71, 73–74 (2003); *Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.,* 208 Ariz. 478, 95 P.3d 542, 544–546 (Ct.App.2004); *East Boston Sav. Bank v. Ogan,* 428 Mass. 327, 701 N.E.2d 331, 331 (1998); *Kim v. Lee,* 145 Wash.2d 79, 31 P.3d 665, 670–671 (2001). The rationale is that if the new mortgagee had no actual

of the Restatement to be compelling and very persuasive, we are bound by principles of *stare decisis* and accordingly, must find the trial court properly determined appellant is not entitled to the remedy of equitable subrogation.

¶ 11 Pennsylvania, like many other jurisdictions, requires that four criteria must be met for equitable subrogation to apply:

(1) the claimant paid the creditor to protect his own interests;

(2) the claimant did not act as a volunteer;

(3) the claimant was not primarily liable for the debt; and

(4) allowing subrogation will not cause injustice to the rights of others.

See *Tudor Development Group, Inc. v. United States Fidelity & Guaranty Co.*, 968 F.2d 357, 362 (3d Cir.1992), *citing United States Fidelity & Guaranty Co. v. United Penn Bank*, 362 Pa.Super. 440, 524 A.2d 958 (1987); *see also East Boston Savings Bank, supra*, at 334; *Lamb Excavation, supra* at 544; *Eastern Savings Bank, supra*, at 961; *Mort, supra*, at 893–894, *citing Han v. U.S.*, 944 F.2d 526, 529 (9th Cir.1991) (applying California law). Under extant Pennsylvania case law, appellant does not meet the above criteria.

¶ 12 In the case of *Home Owners' Loan Corp. v. Crouse*, 151 Pa.Super. 259, 30 A.2d 330 (1943), this Court reviewed the claim of a creditor to whom the homeowners had applied for a loan to pay various earlier liens on the property. The creditor extended the loan, the proceeds of which were duly applied to those liens. The creditor was unaware, however, of an intervening judgment which had been entered against the homeowners, even though the judgment appeared in public records. The creditor requested that the intervening lien holder subordinate its lien to that of the creditor. The intervening lien holder refused. The creditor filed a complaint alleging the intervening lien holder was unjustly enriched at its own expense and requested that the creditor be subrogated to the priorities of those lien holders whose liens the creditor had paid. This Court essentially found the creditor was a

---

knowledge of the intervening lien, it expected to step into the shoes of the prior lien holder. *Houston*, at 73–74. At least one court has declined to adopt this approach since it found it may encourage prospective mortgagees to avoid conducting title searches. *Id.* The Restatement criticizes this approach as it explains that, ordinarily, lenders who have actual knowledge of an intervening lien expect and desire to get the security and priority of the mortgage being paid. Restatement § 7.6, comment e. The Restatement instead regards as critical the question of whether the lender reasonably expected to get security and priority equal to the mortgage being paid and, absent affirmative proof to the contrary, such an expectation is assumed. Restatement § 7.6, comment e. We also note that this majority approach runs counter to, or at the very least does nothing to further, the purpose of the doctrine as elucidated by the Restatements, i.e. to prevent an unjustified and unwarranted windfall on behalf of the intervening lien holder. *See* Restatement § 7.6,

comment a. In the case at hand, it is undisputed appellant lacked actual knowledge of the intervening lien.

The second approach is to bar application of the doctrine when the new mortgagee had either actual or constructive notice of an intervening lien. This approach likewise runs counter to the purpose of the doctrine as elucidated by the Restatements. *See* Restatement § 7.6, comment a; *Houston, supra*, at 73–74.

The third approach is that of the Restatement, as explained *supra*.

Another court declined to take a "bright-line" approach as to the potential subrogee's knowledge of any intervening liens, and instead was persuaded by courts that not only allow subrogation where the subrogee has actual or constructive notice of the intervening mortgage, but also look to equity to decide if subrogation is inappropriate. *East Boston Sav. Bank* at 335, *citing Davis v. Johnson*, 241 Ga. 436, 246 S.E.2d 297 (1978) and Restatement § 7.6, comment d.

mere volunteer and as such, was not entitled to the requested relief.[9] In so holding, this Court stated:

Courts are inclined to favor and further the doctrine of subrogation or, as it is sometimes called, substitution, but that is not a universal remedy for those who have parted with their money and obtained less security than they expected. To entitle one to subrogation his equity should be strong and superior to those who oppose it

It always requires something more than the mere payment of a debt in order to entitle the person paying the same to be substituted in the place of the original creditor. A mere volunteer or intermeddler who, having no interest to protect, without any legal or moral obligation to pay, and without an agreement for subrogation, or an assignment of the debt, pays the debt of another is not entitled to subrogation, the payment in this case absolutely extinguishing the debt. The payor must have acted on compulsion, and it is only in cases where the person paying the debt of another will be liable in the event of a default or is compelled to pay in order to protect his own interests, or by virtue of legal process, that equity substitutes him in the place of the creditor without any agreement to that effect; in other cases the debt is absolutely extinguished.

One who is under no legal obligation or liability to pay a debt and who has no interest in, or relation to, the property is a stranger or volunteer with reference to the subject of subrogation

*Id.,* at 331 (citations omitted); *see also Kaiser v. Old Republic Ins. Co.,* 741 A.2d 748, 754 (Pa.Super.1999).

¶ 13 In denying the relief sought, this Court found Home Owners' Loan Corporation was a stranger to the homeowner and that it was under no legal obligation or compulsion to pay the homeowner's debts. The corporation was "an entirely voluntary agent with no interest in the property and at liberty to make its own bargain—agree or refuse to make its loan as it saw fit." *Home Owners',* at 332. We found, moreover, that subrogation would prejudice the rights of the intervening lien holder who was properly characterized as innocent. Finally, we held, "courts of equity will not relieve a party from the consequences of error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." *Id.* Applying principles of equity and fairness, therefore, we denied the creditor the relief sought.

¶ 14 The holding in *Home Owners'* is not in accord with the Restatement [10] or with the case law of many of our sister states.[11]

---

9. The Restatement does not adopt the "volunteer" rule but rather requires that the subrogee pay to protect some interest. Restatement § 7.6, comment f(5). In the context of refinancing a mortgage, the mortgagee would clearly pay previous liens in order to protect its own interests, i.e., to gain first priority.

10. We note the Restatement (Third) of Property, Mortgages, was added in 1997 and is the American Law Institute's first comprehensive treatment of the law of mortgages. Neither the original Restatement of Property nor the Restatement (Second) of Property covered transactions involving the use of real property as security for payment of an obligation. *See*

Publishers' Note to the Restatement (Third) of Property, Mortgages. As a result, Pennsylvania's adoption of Section 7.6 may be an issue ripe for Supreme Court review.

11. *Cf., e.g.,* Restatement (Third) of Property, Mortgages, § 7.6; *Eastern Savings Bank, FSB v. Pappas,* 829 A.2d 953, 956–957 (D.C.App. 2003) (granting subrogation in favor of mortgagee who refinanced earlier loan and finding the mortgagee had paid the earlier loan to protect its own interests and did not act as a volunteer, and subrogation would not prejudice intervening lien holder since it would retain the precise security interest it had possessed at the time the mortgagee paid the

It has not been overruled, however, and so remains binding precedent to this Court. *Singer v. Dong Sup Cha*, 379 Pa.Super. 556, 550 A.2d 791, 792 (1988) (stating that although precedents are not recent, they are nevertheless binding); *State Farm Fire & Cas. Co. v. Craley*, 844 A.2d 573, 575 (Pa.Super.2004) (stating we are bound by decisions of other panels of this Court until an *en banc* panel of this Court, the legislature, or the Supreme Court decides otherwise). The facts of this case are practically indistinguishable from those of *Home Owners'*. The trial court therefore properly found appellant was not entitled to the remedy of equitable subrogation.

¶ 15 We have considered the merits of appellant's petition to intervene and conclude its denial does not result in a "practical denial of relief to which appellant is entitled but which can be secured in no other way." *See Luiziaga, supra.* Appellant is not entitled to equitable subrogation. It has a secured interest in the property, albeit an interest subordinate to appellee's interest. Appellee has an undisputed right to foreclose on the property. Appellant's brief at 12. Intervention in this case is not necessary to protect appellant's interest, i.e., it will not provide appellant relief that can be secured in no other way.

¶ 16 Our disposition of appellant's first issue renders review of its second and third issues unnecessary.

¶ 17 Appeal quashed.

earlier debt); *Lamb Excavation, Inc. v. Chase Manhattan Mortg. Corp.*, 208 Ariz. 478, 95 P.3d 542, 544 (Ct.App.2004) (granting subrogation, ignoring the alleged negligence of the subrogee and instead focusing on the lack of prejudice to the intervening lien holder, and holding constructive notice is not an element of equitable subrogation under Arizona law); *Houston v. Bank of America Fed. Sav. Bank*, 119 Nev. 485, 78 P.3d 71, 73 (2003) (granting subrogation, finding no evidence the intervening lien holder would be prejudiced since it remained in the same position, and adopting the Restatement approach in finding the subrogee's constructive and/or actual knowledge of the intervening lien irrelevant); *Suntrust Bank v. Riverside Nat. Bank of Florida*, 792 So.2d 1222 (Fla.App.2001), *review denied* 821 So.2d 300, (Fla.2002) (holding equitable subrogation is to be granted to prevent unjust enrichment even though the party seeking it is negligent, as long as there was no prejudice to the other party, i.e., if the refinancing mortgagee could establish the intervening mortgagee would be no worse off than if the original first mortgage had not been satisfied).