J. A03037/15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| BOKF, N.A. D/B/A BANK OF OKLAHOMA, : | IN THE SUPERIOR COURT OF |
| : | PENNSYLVANIA |
| Appellant : | |
| : | |
| v. : | |
| : | |
| FNB OF PENNSYLVANIA, FORMERLY : | |
| KNOWN AS GUARANTY BANK, NA : | |
| : | |
| Appellee : | No. 772 MDA 2014 |

Appeal from the Order April 21, 2014
In the Court of Common Pleas of Luzerne County
Civil Division No(s).: 12737-2011

BEFORE: MUNDY, STABILE, and FITZGERALD,[*] JJ.

MEMORANDUM BY FITZGERALD, J.:                    **FILED MAY 27, 2015**

Appellant, BOKF, N.A., doing business as Bank of Oklahoma, appeals from the order granting the preliminary objections in the form of a *demurrer* raised by Appellee, FNB of Pennsylvania, formerly known as Guaranty Bank, N.A.  Appellant contends the trial court should have permitted it to proceed on its theories of equitable subrogation and unjust enrichment.  We affirm.

We adopt the facts and procedural history set forth by the trial court's decision.  **See** Trial Ct. Op., 9/8/14, at 1-4.  We add that the court's October 2, 2013 order permitted Appellant to file an interlocutory appeal.  Order, 10/2/13.  Appellant filed a petition for permission to file an interlocutory appeal with the trial court on October 31, 2013.  On April 21, 2014, before

---

[*] Former Justice specially assigned to the Superior Court.

the trial court ruled on Appellant's petition, the parties filed a joint motion for entry of final order permitting Appellant to withdraw the remaining claim in its complaint. The trial court entered an order on April 21, 2014, which granted the parties' joint motion and resolved all outstanding claims. Order, 4/21/14. Appellant timely appealed on May 5, 2014, and timely filed a court-ordered Pa.R.A.P. 1925(b) statement.

Appellant raises the following issues:

> Did the trial court improperly determine that [Appellant] had acted carelessly with regard to the failure to discover [Appellee's] loan?
>
> Did the trial court improperly determine that [Appellant] acted as [sic] "volunteer" when entering into [Appellant's] second loan?
>
> Did the trial court improperly determine that [Appellee] would be prejudiced if [Appellant] was found to be entitled to equitable subrogation?
>
> Did the trial court improperly determine that [Appellant] was not entitled to seek a claim under the theory of unjust enrichment?

Appellant's Brief at 4.

We summarize Appellant's arguments for all of its issues. Appellant contends it did not act carelessly or imprudently by issuing the Second Loan. Appellant states that the borrowers did not disclose the FNB loan and a title report similarly did not identify any lien from the FNB loan. It insists the trial court should not impute the conduct of third parties to it. Appellant maintains that by refinancing the First Loan, it was not a "volunteer." It

avers that FNB would not be prejudiced by any equitable subrogation. Lastly, Appellant opines the trial court should have permitted its claim for unjust enrichment. Appellant, we hold, is due no relief.

Our standard of review follows:

> An appellate court should affirm an order of a trial court . . . sustaining preliminary objections in the nature of a demurrer where, when all well-pleaded material facts set forth in the complaint and all inferences fairly deducible from those facts are accepted as true, the plaintiff is not entitled to relief. The court need not, however, accept any of the complaint's conclusions of law or argumentative allegations. Where a doubt exists as to whether a demurrer should be sustained, this doubt should be resolved in favor of overruling it.

*Krentz v. Consol. Rail Corp.*, 910 A.2d 20, 26 (Pa. 2006) (citations and punctuation marks omitted). "We will reverse a trial court's decision to sustain preliminary objections only if the trial court has committed an error of law or an abuse of discretion." *Lerner v. Lerner*, 954 A.2d 1229, 1234 (Pa. Super. 2008) (citation omitted).

> A *demurrer* is an assertion that a complaint does not set forth a cause of action or a claim on which relief can be granted. A *demurrer* by a defendant admits all relevant facts sufficiently pleaded in the complaint and all inferences fairly deducible therefrom, but not conclusions of law or unjustified inferences. In ruling on a *demurrer*, the court may consider only such matters as arise out of the complaint itself; it cannot supply a fact missing in the complaint. Where the complaint fails to set forth a valid cause of action, a preliminary objection in the nature of a *demurrer* is properly sustained.

*Id.* at 1234-35 (citations omitted).

"Subrogation is defined as the substitution of one entity in the place of **another** with reference to a lawful claim, demand, or right, so that the one who is substituted succeeds to the rights of the other in relation to the debt or claim, and its rights, remedies or securities." 46 Pa. Law Encyclopedia 2d, Subrogation § 1 (2009) (emphasis added and footnote omitted); ***accord Pub. Serv. Mut. Ins. Co. v. Kidder-Friedman***, 743 A.2d 485, 488 (Pa. Super. 1999); ***Molitoris v. Woods***, 618 A.2d 985, 989 (Pa. Super. 1992); ***Home Owners' Loan Corp. v. Crouse***, 30 A.2d 330, 331 (Pa. Super. 1943). The doctrine "is invoked to enable the person paying the debt to use the original creditor's remedies against the primary debtor." 46 Pa. Law Encyclopedia 2d, Subrogation § 2. Instantly, Appellant seeks to subrogate itself, as its own Second Loan was used to repay its own First Loan. Appellant is not substituting another entity—it seeks to substitute itself. By definition, subrogation is unavailable to Appellant. ***See*** 46 Pa. Law Encyclopedia 2d, Subrogation § 1 (2009).

Regardless, assuming Appellant can subrogate itself, after careful review of the parties' briefs, the record, and the decision of the Honorable Lesa S. Gelb, we affirm based on the trial court's opinion. ***See*** Trial Ct. Op. at 6-8 (holding, *inter alia*, that Appellant failed to fulfill all four criteria for equitable subrogation; and unjust enrichment was unavailable to Appellant). We add that the instant case is analogous to ***First Com. Bank v. Heller***,

863 A.2d 1153 (Pa. Super. 2004). In **Heller**, a search of the public records would have revealed three mortgages:

1. Central Bank's 1990 mortgage

2. Mid-State's 1995 mortgage

3. First Commonwealth Bank's 2000 mortgage

**Id.** at 1154. Ameriquest Mortgage Company overlooked the 2000 mortgage and extended a mortgage in 2001 to Heller, which was used to pay off the senior Central Bank and Mid-State mortgages. **Id.** Thus, the below mortgages were of record:

1. Mid-State's 1995 mortgage [paid off but not closed]

2. First Commonwealth Bank's 2000 mortgage

3. . . . Ameriquest Mortgage Company's 2001 mortgage

**Id.** First Commonwealth Bank moved to foreclose on its 2000 mortgage and Ameriquest moved to invoke equitable subrogation because its 2001 mortgage was used to repay the senior Central Bank and Mid-State mortgages. **Id.** at 1156.

The **Heller** Court held Ameriquest could not use equitable subrogation to move its 2001 mortgage ahead of First Commonwealth Bank's 2000 mortgage. **Id.** at 1158. The **Heller** Court reasoned that we are bound by precedent rejecting equitable subrogation under these circumstances, *i.e.*, permitting "a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." **Id.** at 1156.

Ameriquest, the **Heller** Court concluded, had a secured interest in the property, albeit subordinate to First Commonwealth Bank's mortgage, and could still foreclosed but could not "assume the same priority position" as Central Bank or Mid-State. **Id.** at 1156, 1160. Instantly, Appellant—akin to Ameriquest—has moved to assume the same priority position of the holder of the 1998 mortgage because its 2003 mortgage was used to repay the 1998 mortgage. **Cf. id.** Bound by **Heller**, we must similarly reject Appellant's attempt to invoke equitable subrogation. **Cf. id.** Accordingly, after accepting as true all well-pleaded facts, we discern no abuse of discretion or error of law by the trial court and thus affirm the order below. **See Lerner**, 954 A.2d at 1234; **Krentz**, 910 A.2d at 26.

Order affirmed.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary

Date: 5/27/2015

BOKF, N.A. d/b/a BANK OF OKLAHOMA : IN THE COURT OF COMMON PLEAS
                                             :        OF LUZERNE COUNTY

                Plaintiff     :     CIVIL ACTION--EQUITY

   v.                    :

FIRST NATIONAL BANK OF     :
PENNSYLVANIA, formerly known as  :
GUARANTY BANK, N.A.      :
              Defendant   :     NO: 12737 of 2011

## ORDER

NOW THIS _____ day of September, 2014, the Division of Judicial

Records/Prothonotary is ORDERED AND DIRECTED to mail a copy of this ORDER and

attached OPINION to the parties/counsel of record pursuant to Pa. R.C.P. 236 as well as file

and transmit the record to the Superior Court.

BY THE COURT:

LESA S. GELB, JUDGE

cc:

Thomas J. Mosca, Esquire
345 Pierce Street
Kingston, PA 18704

John M. Gallagher, Esquire
Robert S. Sensky, Esquire
Laputka, Bayless, Ecker & Cohn, P.C.
1 S. Church Street, Suite 301
Hazleton, PA 18201



Filing ID: 1946798
2011-12737-0054 Order with Rule 236

Luzerne County Civil Records
9/8/2014 10:53:18 AM

BOKF, N.A. d/b/a BANK OF OKLAHOMA : IN THE COURT OF COMMON PLEAS OF
                                  :               LUZERNE COUNTY
                                  :
                       Plaintiff    :         CIVIL ACTION--EQUITY
                                  :
   v.                               :
                                  :
FIRST NATIONAL BANK OF          :
PENNSYLVANIA, formerly known as    :
GUARANTY BANK, N.A.           :
                Defendant    :       NO: 12737 of 2011

2014 SEP -8 PM 2: 17

FILED PROTHONOTARY LUZERNE COUNTY

## OPINION

Bank of Oklahoma ("BOFK") brought this action against First National Bank of

Pennsylvania ("FNB") by filing a complaint on October 12, 2011. BOFK filed an

amended complaint on January 31, 2012. On May 21, 2012, FNB filed preliminary

objections to the amended complaint and on August 31, 2012 this Court granted the

preliminary objections and directed BOFK to file another amended complaint. BOFK

filed their second amended complaint on January 28, 2013. Thereafter, FNB filed

preliminary objections to the second amended complaint on March 28, 2013. This Court

granted the preliminary objections on June 27, 2013 and on July 2, 2013 BOFK filed a

motion for reconsideration. On July 24, 213, BOFK filed its motion for amendment of

interlocutory order requesting that this Court amend its order to include a statement per

42 Pa.C.S. § 702(b)[1] On August 22, 2013, the June 27, 2013 order was vacated and held

---

[1] **(b) Interlocutory appeals by permission.**--When a court or other government unit, in making an interlocutory order in a matter in which its final order would be within the jurisdiction of an appellate court, shall be of the opinion that such order involves a controlling question of law as to which there is substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the matter, it shall so state in such order. The appellate court may thereupon, in its discretion, permit an appeal to be taken from such interlocutory order.



Filing ID: 1946799
2011-12737-0055 Opinion
Luzerne County Civil Records
9/8/2014 10:54:43 AM

in abeyance until October 2, 2013 at which time the June 27, 2013 order was confirmed.[2]

BOFK Second Amended Complaint set forth claims for equitable subrogation and unjust enrichment. Resource One CDC loaned money to Joseph and Ann Donnini (hereinafter referred to as the "Donninis") on or about March 26, 1998 in the amount of $211,000.00, which was assigned to BOFK on March 21, 1999 ("BOFK 1st Loan"). This loan was secured by a mortgage against the Donninis residence with an address of 97 Old Ashley Road, Wilkes-Bane, Pennsylvania ("Property"). On or about December 27, 2000 FNB made a $250,000.00 loan to Donninico, Inc., a Pennsylvania Corporation, and this loan was guaranteed by the Donninis who pledged a second position lien to FNB in their Property by way of a mortgage ("FNB Loan"). The FNB Loan was also secured by additional commercial property located at 507-509 South Main Street, Wilkes-Bane, Pennsylvania ("Commercial Property").

On March 14, 2003 BOFK refinanced the BOFK 1st Loan with the Donninis with a new loan in the amount of $205,300.00 ("BOFK 2nd Loan"). The Donninis did not represent to BOFK that they had pledged their Property to FNB nor do we know if they were asked that question. BOFK did require and received title insurance from Guarantee Title and Trust Company on the BOFK 2nd Loan, but did not select the title agent or the title company as the Donninis selected the title agent. The title insurance policy issued to BOFK for this loan unfortunately did not reveal the existence of the FNB mortgage against the Property. BOFK did not request a subordination agreement from FNB for the BOFK 2nd Loan to remain the first lien holder against the Property

---

[2] This allowed time for a mediation to take place but to no avail.

2

due to the fact that it was unaware of the FNB mortgage. The FNB commitment letter does set forth and identify that it would have a second position lien against the Property.

Guarantee Title & Trust Company issued the title insurance policy for the BOFK 2nd Loan. BOFK made a claim under the lender's policy of title insurance due to the BOFK 2nd Loan being a second position lien and not a first position lien as set forth in the policy when the Donninico, Inc failed to make payments under the BOFK 2nd loan. According to the representations made by counsel for BOFK at the June 20, 2013 hearing, Guarantee Title & Trust Company paid approximately $70,000.00 to BOFK under the lenders title policy due to the title claim.

This Court granted the Preliminary Objections of the FNB based upon the submissions of the parties. The Commonwealth Court in Richardson v. Beard provides the guidelines for examining legal insufficiency of a pleading (demurrer) as follows:

> "In considering preliminary objections, we must consider as true all well-pleaded material facts set forth in the petition and all reasonable inferences that may be drawn from those facts. Sheffield v. Department of Corrections, 894 A.2d 836 (Pa. Commw. 2006). *Preliminary objections will be sustained only where it is clear and free from doubt that the facts pleaded are legally insufficient to establish a right to relief Id.* We need not accept as true conclusions of law, unwarranted inferences from facts, argumentative allegations, or expressions of opinion. Myers v. Ridge, 712 A.2d 791 (Pa. Commw. 1998)." (emphasis added). Richardson v. Beard 942 A.2d 911, 913 (Pa. Commw. 2008)

"Preliminary objections in the nature of a demurrer test the legal sufficiency of the plaintiffs complaint." Sexton v. FNC Bank, 792 A.2d 602, 604 (Pa. Super. 2002) (citation omitted), *appeal denied,* 572 Pa. 725, 814 A.2d 678 (2002). "The question presented by the demurrer is whether, on the facts averred, the law says with certainty that no recovery is possible." Mistick Inc. v. Northwestern National Casualty Company, 806 A.2d 39, 42 (Pa.

3

Super. 2002). (citation omitted) "Preliminary objections in the nature of a demurrer require the court to resolve the issues solely on the basis of the pleadings; no testimony or other evidence outside of the complaint may be considered to dispose of the legal issues presented by the demurrer." (citation omitted) Cooper v. Frankford Health Care System Inc., 960 A.2d 134, 143 (Pa. Super. 2008). Any doubt as to the legal sufficiency of the complaint should be resolved in favor of overruling the demurrer. Kane v. State Farm Fire & Casualty Company, 841 A.2d 1038 Pa. Super. 2003).

Equitable subrogation is one of two legal theories relied upon by the Plaintiffs. According to the Restatement, equitable subrogation is "an equitable remedy designed to avoid a person's receiving an unearned windfall at the expense of another." Restatement (Third) Of Property, Mortgages, § 7.6 (1997). Put more simply, equitable subrogation allows "a person who pays off an encumbrance to assume the same priority position as the holder of the previous encumbrance." First Commonwealth Bank v. Catharine Heller, 863 A.2d 1153, 1156 (PA. Super 2004) (quoting Houston v. Bank of America Fed. Say. Bank, 119 Nev. 485, 78 P.3d 71, 73 (2003)). The law of the land in Pennsylvania is Home Owners' Loan Corporation v. Crouse et al. 30 A.2d 330 (PA. Super 1943) and remains binding precedent on this Court with some distinctions from the Rest (3rd) of Property, Mortgages Section 7.6.

According to Home Owners, the courts of equity will not relieve a party from the consequences of an error due to his own ignorance or carelessness when there were available means which would have enabled him to avoid the mistake if reasonable care had been exercised." Id. at 332 (citing Felin v. Futcher, 51 Pa.Super. 233, 1912 WL 4727 (Pa.Super.1912)).

4

In <u>Home Owners</u>, W. H. Mitchell acquired in 1909 title to a parcel of property upon which he subsequently built a house where he and his family resided. On April 29, 1925 the First Savings and Trust Company of Derry (the "Trust Company") entered a judgment against Mitchell and his wife, in the sum of $5,460, which was a first lien the property. This judgment was revived on March 19, 1930, in the sum of $4,880. On June 4, 1925, Homer Crouse caused a judgment in the sum of $682.50 to be entered against Mitchell, which was properly revived. Mitchell and his wife on March 8, 1934, filed with the Home Owners' Loan Corporation ("Home Owners") a written application for a loan for the purpose of paying the liens against their home. They set forth therein that their property was encumbered by a judgment, a first lien on the property, in favor of the trust company and there were also liens for the 1932, 1933, and 1934 County, Township, and School taxes, but no reference was made to the Crouse judgment and it appeared Home Owners had no knowledge of it. On March 16, 1934, J. M. Nicholson caused a judgment to be entered against the Mitchells in the sum of $113. The Trust Company, through its trustees and assignees who, in the meantime, had been appointed pursuant to a plan of reorganization, agreed to accept $3,958.66 in payment and satisfaction of its judgment and Nicholson consented to postpone and subordinate his lien to the mortgage to be executed by the Mitchells as security for a loan granted by Home Owners for $4,193.81. Home Owners paid from the proceeds of this loan the Trust Company's judgment, which was satisfied, and the taxes together with certain costs. In the early part of 1939 Home Owners learned of the existence of the Crouse judgment. A request was then made that Crouse subordinate his lien to that of the Home Owner's mortgage, which

5

Crouse refused to do. The complainant of Home Owners averred in part that Crouse was unjustly enriched at its expense. The Pennsylvania Superior Court held " [i]f the appellant was unaware of the Crouse judgment it was not due to the fault of Crouse. It can be attributed only to its own negligence in failing to search or discover what clearly appeared on the public records." 30 A.2d 334. It went on to hold that Crouse had a superior lien position than that of Home Owners.

In order to be successful under a cause of action for equitable subrogation, the Pennsylvania Superior Court in 1313466 Ontario, Inc. v. Carr, 2008 PA.Super. 135, 954 A.2d 1 (2008) held that four criteria must be met. The criteria are:

1.  The claimant paid the creditor to protect its own interest;

2.  The claimant did not act as a volunteer;

3.  The claimant was not primarily liable for the debt; and

4.  Allowing subrogation will not cause injustice to the rights of others.

BOFK pleaded that with respect to the first criteria that it acted to protect its own commercial interests by making the 2nd loan to the Donninis. It then argued that it was not a stranger to the property and was not a volunteer in light of already having made its first loan to the Donninis; and thus meets the second criteria. Clearly the Donninis are the only parties liable for the Debt of the BOFK 2nd Loan with regard to the third criteria. With respect to the fourth criteria, BOFK argues that since FNB was originally in a second position when it made its loan, and by putting the BOFK 2nd loan as the first position lien it will not deprive FNB of its rights.

BOFK fails to meet three of the four criteria required for an equitable subrogation claim to survive preliminary objections. BOFK admits that it made the second loan to

6

protect its own commercial interests which in and of itself was a voluntary act of BOFK for its own benefit. The type of equities the Courts contemplate for equitable subrogation are more like that in the most recent case of In re: Estate of Richard Devoe, deceased, appeal of James B. Mooney 74 A.3d 264 (PA Super. 2013). In that case the Trial Court found that James Mooney, a domestic partner of the deceased acted as a volunteer when he executed a mortgage in favor of a lender so he could retain a property he had a half interest in, and he was not entitled to equitable subrogation; the Superior Court said that was an abuse of discretion. The Appellate Court found Mooney had no choice but to pay the debt on the estate in order to protect his own interest in the residue, therefore he was not a volunteer. In the case herein using the analysis in James B. Mooney's appeal with regard to criteria two (in which claimant did not act as a volunteer) the second loan BOKF was indeed a voluntary act by the bank. It did not have to make the second loan to the Donninis but it chose to make the loan, ergo the BOFK 2nd Loan was made voluntarily by BOFK. In addition the proceeds from the Second BOFK Loan were used to pay the First BOFK Loan, so it did not involve a new or additional credit. Furthermore, BOFK obtained title insurance, which it did to protect its interest from exactly the type of issue in which it faced itself with the Donninis.

At the time FNB made its loan, it knew it was going have a second position lien; however, that does not strip FNB of its rights under the law as it is in Pennsylvania. BOFK relied on to its detriment the title search of Guarantee Title & Trust Company, which failed to disclose the FNB mortgage. Had Guarantee Title & Trust Company not been faced with financial distress it would have paid BOFK the balance due and owing under the BOFK 2nd Loan. BOFK acknowledged at the June 20, 2013 hearing that it was paid approximately $70,000.00 from the title insurance policy. Had Guarantee Title & Trust Company had the financial ability to pay the entire claim; BOKF would not have instituted this action.

7

Allowing equitable subrogation to take place in this case, would cause injustice to FNB who issued its loan as a second position mortgage based upon the amount of the BOFK First Loan. The First BOKF Loan was satisfied, which per statute, placed FNB in a first position due to the Second BOFK Loan being recorded after the FNB Loan. Without requesting or obtaining a subrogation agreement from FNB, BOFK's Second Loan cannot be placed ahead of FNB's Loan because of an error in a title search. The FNB Loan was properly of record in the Office of the Recorder of Deeds of Luzerne County prior to the BOFK Second Loan and thus the facts in this matter are very similar to those in the Home Owners case whereby the Superior Court held in favor Crouse, who was in substantially the same situation as FNB in this matter.

BOKF also refers briefly to unjustly enrichment. The elements of unjust enrichment include 1) benefits conferred on defendant by plaintiff 2) appreciation of such benefits by defendant; and 3) acceptance and retention of such benefits under such circumstances that it would be inequitable for defendant to retain benefit without payment of value. The application of unjust enrichment is dependent on the particular factual circumstances of the case. Mitchell v. Moore, 792 A.2d 1200, page (Pa. Super 1999). In this case this Court would reiterate that the law of equitable subrogation with these facts does not allow for unjust enrichment in that under Home Owners the Courts of equity will not relieve a party of the consequences of an error due to his ignorance and carelessness. The FNB loan was overlooked by the title search but it was available to be found.

BOKF fails to meet the requirements for a claim for equitable subrogation; therefore its second claim under unjust enrichment is moot because it is dependent upon the equitable subrogation theory and cannot proceed in its absence in this case. Based upon the foregoing the Preliminary Objections of the Defendant are sustained.

8

By the Court:

Lesa S. Gelb, Judge