J-S82044-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| IN RE: J.W., A MINOR | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| APPEAL OF: J.W., NATURAL FATHER | : | No. 1385 WDA 2017 |

Appeal from the Order Entered August 2, 2017
in the Court of Common Pleas of Allegheny County
Orphans' Court at No(s):  CP-02-AP-0000082-2017

BEFORE:   BENDER, P.J.E., STEVENS, P.J.E.,* and STRASSBURGER, J.**

MEMORANDUM BY STRASSBURGER, J.:            **FILED FEBRUARY 27, 2018**

J.W. (Father) appeals from the order entered August 2, 2017, in the Court of Common Pleas of Allegheny County, which terminated involuntarily his parental rights to his minor son, J.W. (Child), born in December 2015.[1] We affirm.

We summarize the relevant factual and procedural history of this matter as follows.  Allegheny County Children, Youth, and Families (CYF) received a referral regarding Child on January 9, 2016.  N.T., 8/2/2017, at 13.  CYF conducted an investigation, which revealed that Mother was diluting Child's formula, that she lacked the transportation necessary to take Child to his

_____

* Former Justice specially assigned to the Superior Court.

** Retired Senior Judge assigned to the Superior Court.

[1] The orphans' court also terminated the parental rights of Child's mother, R.M. (Mother).  Mother did not file a brief in connection with this appeal, nor did she file her own separate appeal.

medical appointments, and that she was charged with the crime of endangering the welfare of children due to Child's poor physical condition. *Id.* at 13-14. Mother had been living with Father and Child's paternal grandmother (Paternal Grandmother), but Father forced Mother to leave when CYF began its investigation. *Id.* CYF developed a safety plan with Mother. *Id.* at 14-15. However, Mother soon violated the plan by leaving the shelter where she was living, failing to maintain contact with CYF, and failing to attend a social services appointment. *Id.* at 16. CYF requested emergency custody of Child on January 26, 2016, and the juvenile court granted CYF's request. *Id.* The court entered a shelter care order on January 29, 2016, and adjudicated Child dependent on February 10, 2016, but permitted CYF to return Child to Mother's care upon agreement by the parties. Exhibit CYF 2 (dependency orders).

CYF requested emergency custody of Child for a second time on March 1, 2016, after it discovered that Mother was hospitalized, and that Child was living with Father and Paternal Grandmother. N.T., 8/2/2017, at 18-19. CYF requested emergency custody based on concerns that both Father and Paternal Grandmother were uncooperative and had significant criminal histories. *Id.* at 19. The juvenile court denied CYF's request. *Id.* CYF requested emergency custody once again on March 3, 2016, after Mother alleged that Father appeared at the hospital intoxicated during the night, argued with her, and attempted to pull out her IV. *Id.* at 19-20. The court

granted CYF's request, but placed Child back in Mother's care pursuant to shelter care order entered March 4, 2016.[2] Exhibit CYF 2.

Finally, CYF requested emergency custody of Child on March 23, 2016, after another alleged incident of domestic violence involving Father and Mother. N.T., 8/2/2017, at 21. The juvenile court granted CYF's request, and placed Child in foster care. *Id.* The court entered a shelter care order on March 24, 2016, and Child has remained in foster care since that time. *Id.*; Exhibit CYF 2.

Following the shelter care hearing, Father failed to maintain consistent contact with Child. Father visited with Child twice before he was incarcerated in June 2016.[3] N.T., 8/2/2017, at 37. Father then made no effort to contact Child until he requested visits during an aggravated circumstances hearing on March 17, 2017. *Id.* at 37-38. The juvenile court entered an order finding aggravated circumstances that same day, based on Father's failure to have contact with Child for six months. Exhibit CYF 2. The court also relieved CYF of its obligation to provide reunification efforts. *Id.*

---

[2] The juvenile court's shelter care order appears to contain a typographical error, as it indicates that physical custody would return to Father, but that Father would be permitted only supervised visits with Child. *See* Exhibit CYF 2. The testimony presented during the termination hearing confirms that the court returned Child to Mother. N.T., 8/2/2017, at 20-21.

[3] Father testified that he was convicted of driving under the influence, and that he anticipated being released from incarceration in October 2017. N.T., 8/2/2017, at 5.

On May 25, 2017, CYF filed a petition to terminate Father's parental rights to Child involuntarily. The orphans' court conducted a termination hearing on June 9, 2017, and August 2, 2017. Following the hearing, the court entered an order terminating Father's parental rights. Father timely filed a notice of appeal on August 31, 2017, along with a concise statement of errors complained of on appeal.

Father now raises the following issues for our review.

> 1. Did the [orphans'] court abuse its discretion and/or err as a matter of law in appointing KidsVoice as counsel for the [c]hild when an apparent conflict between the legal interests of the [c]hild and the interest of KidsVoice in representing the best interests of the child in the underlying dependency proceedings was raised by [Father]?
>
> 2. Did the [orphans'] court abuse its discretion and/or err as a matter of law in concluding that termination of [Father's] parental rights would serve the needs and welfare of the child pursuant to 23 Pa.C.S. §[]2511(b)?

Father's Brief at 6 (orphans' court answers omitted).

We consider Father's issues mindful of our standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

In his first issue, Father argues that the orphans' court abused its discretion and/or committed an error of law by appointing Child's dependency guardian *ad litem* (GAL), KidsVoice, as his counsel during the termination proceedings.[4]  Father's Brief at 17-29.

Subsection 2313(a) of the Adoption Act governs our analysis of this issue.

> **(a) Child.--**The court shall appoint counsel to represent the child in an involuntary termination proceeding when the proceeding is being contested by one or both of the parents.  The court may appoint counsel or a guardian ad litem to represent any child who has not reached the age of 18 years and is subject to any other proceeding under this part whenever it is in the best interests of the child.  No attorney or law firm shall represent both the child and the adopting parent or parents.

23 Pa.C.S. § 2313(a).

In *In re Adoption of L.B.M.*, 161 A.3d 172 (Pa. 2017), our Supreme Court held that subsection 2313(a) requires courts to appoint counsel to represent the legal interests of any child involved in a contested involuntary termination proceeding.  The Court explained that a child's legal interests are distinct from his or her best interests, in that a child's legal interests are synonymous with the child's preferred outcome, while a child's best interests must be determined by the court.  *Id.* at 174.

_____

[4] KidsVoice continues to act as Child's counsel on appeal, and filed a brief in this Court supporting the termination of Father's parental rights.

Importantly, the Justices disagreed on whether an attorney serving as a child's dependency GAL may also serve as that child's counsel during contested involuntary termination proceedings. In the Court's lead opinion, Justice Wecht, joined by Justices Donohue and Dougherty, opined that a child's legal interests may not be represented by his or her dependency GAL. *Id.* at 181. However, the Court's remaining four Justices disagreed with that portion of the lead opinion, and opined in a series of concurring and dissenting opinions that a child's dependency GAL may serve as his or her counsel, so long as the GAL's dual role does not create a conflict of interest. *Id.* at 183-93.

This Court has since expanded upon the Supreme Court's decision, and explained that an attorney serving as a child's dependency GAL may serve as his or her counsel, so long as the child's legal and best interests are not in conflict. *See In re D.L.B.*, 166 A.3d 322, 329 (Pa. Super. 2017) ("As our decision discusses, [c]hild's best interests and legal interests were unquestionably well represented by [the GAL] in this case and such interests were never in conflict. Accordingly, we decline [f]ather's request to remand this case for the appointment of additional counsel for [c]hild.").

In the instant matter, the orphans' court conducted a conflict-of-interest analysis at the start of the termination hearing, and concluded that no conflict existed between Child's legal interests and best interests. N.T., 6/9/2017, at 15-16. The court reasoned that because the child was 18 months old and non-verbal, "[C]hild is unable to provide any consultation. And, therefore,

that there is no conflict of interest between the GAL and counsel with respect to appointing Kids[]Voice." *Id.* The court elaborated in its 1925(a) opinion that Child "is less than two years old and largely non-verbal. He is not capable of directing counsel in the litigation and, therefore no conflict of interest existed." Orphans' Court Opinion, 10/25/2017, at 8.

In response, Father challenges this Court's interpretation of *L.B.M.* Father's Brief at 23-26. Father argues that our decision in *D.L.B.* is in "direct contradiction" to the holding in *L.B.M.*, and that conducting a conflict of interest analysis "misses the point as there is no provision in §[]2313(a) that allows for appointment of a lawyer to represent the child's best interests and … doing so disserves the purpose of the statute and contradicts its express terms." *Id.* (citing *L.B.M.*, 161 A.3d at 179-81). Father also contends that there was a "clear conflict" in this case, although he fails to articulate how Child's legal interests and best interests differed. Father's Brief at 28.

Father's claim fails immediately, as we are bound by *D.L.B.* and its interpretation of *L.B.M.* Even if we disagreed with *D.L.B.*, which we do not, we could not overrule it here. *See First Commonwealth Bank v. Heller*, 863 A.2d 1153, 1160 (Pa. Super. 2004) (citing *State Farm Fire & Cas. Co. v. Craley*, 844 A.2d 573, 575 (Pa. Super. 2004)) (observing that "we are bound by decisions of other panels of this Court until an *en banc* panel of this Court, the legislature, or the Supreme Court decides otherwise"). Moreover, the record in this case does not indicate any legal interest of Child that differs from Child's best interests as determined by the orphans' court and supported

by Child's counsel. As the court explained in its opinion, Child was less than two years old at the time of the termination hearing, and lacked the capacity to articulate his preferred outcome. Child's GAL, KidsVoice, was instructed by the orphans' court to "insure that any and all evidence relative to [Child's legal interest be] present[e]d to the [c]ourt." N.T., 6/9/2017, at 21. KidsVoice did so at the termination of parental rights hearing, and filed a brief before this Court supporting the termination of Father's parental rights. Father has not articulated any conflict between Child's best interests and legal interests that would warrant the appointment of separate legal counsel for Child under these facts. Therefore, no remand is necessary.

We now turn to Father's second issue, in which he argues that the orphans' court abused its discretion and/or committed an error of law by terminating his parental rights involuntarily. Father's Brief at 29-36.

We review Father's issue mindful of our standard of review.

> The standard of review in termination of parental rights cases requires appellate courts to accept the findings of fact and credibility determinations of the trial court if they are supported by the record. If the factual findings are supported, appellate courts review to determine if the trial court made an error of law or abused its discretion. A decision may be reversed for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. The trial court's decision, however, should not be reversed merely because the record would support a different result. We have previously emphasized our deference to trial courts that often have first-hand observations of the parties spanning multiple hearings.

*In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013) (citations and quotation marks omitted).

Termination of parental rights is governed by section 2511 of the Adoption Act, 23 Pa.C.S. §§ 2101-2938, which requires a bifurcated analysis.

> Initially, the focus is on the conduct of the parent. The party seeking termination must prove by clear and convincing evidence that the parent's conduct satisfies the statutory grounds for termination delineated in [sub]ection 2511(a). Only if the court determines that the parent's conduct warrants termination of his or her parental rights does the court engage in the second part of the analysis pursuant to [sub]ection 2511(b): determination of the needs and welfare of the child under the standard of best interests of the child.

*In re L.M.*, 923 A.2d 505, 511 (Pa. Super. 2007) (citations omitted).

In this case, the orphans' court terminated Father's parental rights pursuant to subsections 2511(a)(1), (2), (5), (8), and (b). We need only agree with the court as to any one subsection of 2511(a), as well as subsection 2511(b), in order to affirm. *In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). Father concedes that CYF presented clear and convincing evidence that his parental rights should be terminated pursuant to subsection 2511(a)(2), and thus does not challenge the orphans' court findings in that regard. Father's Brief at 30 ("CYF, the petitioner, did clearly and convincingly establish threshold grounds for termination pursuant to 23 Pa.C.S. §[]2511(a)(2)."). Thus, we need only consider whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(b), which provides as follows.

> **(b) Other considerations.--**The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of

- 9 -

environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

23 Pa.C.S. § 2511(b).

We determine whether the orphans' court abused its discretion by terminating Father's parental rights pursuant to subsection 2511(b) using the following analysis.

> S[ubs]ection 2511(b) focuses on whether termination of parental rights would best serve the developmental, physical, and emotional needs and welfare of the child. As this Court has explained, [subs]ection 2511(b) does not explicitly require a bonding analysis and the term "bond" is not defined in the Adoption Act. Case law, however, provides that analysis of the emotional bond, if any, between parent and child is a factor to be considered as part of our analysis. While a parent's emotional bond with his or her child is a major aspect of the subsection 2511(b) best-interest analysis, it is nonetheless only one of many factors to be considered by the court when determining what is in the best interest of the child.
>
>> [I]n addition to a bond examination, the trial court can equally emphasize the safety needs of the child, and should also consider the intangibles, such as the love, comfort, security, and stability the child might have with the foster parent. Additionally, this Court stated that the trial court should consider the importance of continuity of relationships and whether any existing parent-child bond can be severed without detrimental effects on the child.

*In re Adoption of C.D.R.*, 111 A.3d 1212, 1219 (Pa. Super. 2015) (quoting *In re N.A.M.*, 33 A.3d 95, 103 (Pa. Super. 2011)) (quotation marks and citations omitted).

Here, the orphans' court found that terminating Father's parental rights would best serve Child's needs and welfare. Orphans' Court Opinion, 10/25/2017, at 9. The court reasoned that "[t]here was no evidence that termination of Father's parental rights would in any way be detrimental to [Child] and the only evidence presented was that termination would benefit [Child] in providing him with the permanence and stability which he needs and to which he is entitled." *Id.*

Father argues that CYF failed to present evidence addressing his relationship with Child, or the emotional effect that terminating his parental rights would have on Child. Father's Brief at 35. Father argues that the orphans' court reached its decision by merely "summariz[ing] testimony and evidence it received in regard to [Child's] relationship with his foster parents and [the] perceived benefits of [Child] remaining in his foster home permanently through adoption." *Id.*

Our review of the record supports the findings of the orphans' court. During the termination hearing, CYF caseworker, Beverly Peters, testified that Father visited with Child only three times after CYF obtained emergency custody on March 23, 2016. N.T., 8/2/2017, at 37-38. Father visited Child on April 19, 2016, and June 3, 2016. *Id.* at 37. After Father was incarcerated in June 2016, he did not request visits with Child until the aggravated circumstances hearing on March 17, 2017. *Id.* at 37-38. Thereafter, CYF attempted to arrange visits with Father, but the process was delayed because "there were things going on with the jail and he was being transferred from

one jail to the next jail. And there was [*sic*] visitation lists that had to be completed by the jail." *Id.* at 38. Father visited Child for the third and final time at SCI Laurel Highlands on July 24, 2017.[5] *Id.*

Ms. Peters further testified that Child has lived in the same pre-adoptive foster home throughout his time in foster care. *Id.* at 41. Child and his pre-adoptive foster mother "are extremely bonded. He's a very happy child. She appears to be in tune to him and what his needs are and addressing those needs." *Id.* at 42.

Thus, the record confirms that terminating Father's parental rights would best serve Child's needs and welfare. As discussed above, Child was born in December 2015, and entered foster care for the second time on March 23, 2016, when he was three months old. Since then, Child has seen Father on only three occasions. Under these circumstances, it was reasonable for the orphans' court to infer that there is no bond between Child and Father, and that Child will not suffer emotional harm if Father's parental rights are terminated. *See In re K.Z.S.*, 946 A.2d 753, 762-63 (Pa. Super. 2008) ("In cases where there is no evidence of any bond between the parent and child, it is reasonable to infer that no bond exists."). Moreover, Child has become extremely bonded with his pre-adoptive foster mother, with whom he has lived for the majority of his young life. *See C.D.R.*, 111 A.3d at 1219 (quoting

_____

[5] CYF attempted another visit at SCI Laurel Highlands on July 31, 2017, but the visit did not occur because Father had already been transferred to Allegheny County to attend the termination hearing. N.T., 8/2/2017, at 39.

*N.A.M.*, 33 A.3d at 103) (permitting the orphans' court to consider the "love, comfort, security, and stability the child might have with the foster parent").

Based on the foregoing, we conclude that the orphans' court did not abuse its discretion by terminating involuntarily Father's parental rights to Child. Therefore, we affirm the court's August 2, 2017 order.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 2/27/2018