J-A28022-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| IN THE MATTER OF HELEN HARPER, AN ALLEGED INCAPACITATED PERSON, | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| APPEAL OF: ROBERT J. HARPER | |
| | No. 91 EDA 2016 |

Appeal from the Order Entered November 25, 2015
In the Court of Common Pleas of Delaware County
Civil Division at No(s): 2015-0597

BEFORE: PANELLA, SHOGAN, and PLATT,[*] JJ.

MEMORANDUM BY SHOGAN, J.:                    **FILED JANUARY 05, 2017**

This is a *pro se* appeal by Appellant, Robert J. Harper ("Robert"), the son of Helen Harper ("Helen"), from the Delaware County Common Pleas Orphans' Court decision deeming Helen, age ninety-seven, an incapacitated person and appointing Jacquelyn Goffney, Esquire, as Guardian *ad litem* ("GAL"). Appellee is the Delaware County Office of Services for the Aging ("COSA"). We affirm.

On October 8, 2015, COSA filed a Petition for Adjudication of Incapacity and Appointment of a Plenary Guardian of the Person and Estate on behalf of Helen. Robert was represented by counsel in the proceedings

_____

[*] Retired Senior Judge assigned to the Superior Court.

before the orphans' court. COSA alleged that Helen lived in deplorable conditions, and her financial affairs were in disarray. The orphans' court entered a preliminary decree on October 14, 2015, and held an evidentiary hearing on November 23, 2015. The orphans' court entered a final decree on November 25, 2015, and appointed Ms. Goffney and Robert as co-guardians of Helen's person and Ms. Goffney and Dana Breslin, Esquire, as co-guardians of Helen's estate. Robert filed a notice of appeal on December 23, 2015. Both Robert and the orphans' court complied with Pa.R.A.P. 1925. Robert is proceeding *pro se* on appeal.

The orphans' court described the conditions of Helen's home as follows:

> At the time the Petition at Issue was filed, Helen Harper was 97 years old. For some time prior to the Petition being filed, Helen Harper resided with her son, Robert Harper. While Helen Harper was residing with Robert, COSA received a report of need concerning Helen Harper and Donna Smith was the COSA case manager assigned to investigate that report. Donna testified that she had to visit the house in which Robert and Helen Harper resided four times before she was able to meet with Helen. The exterior of the house was in poor condition looking as if the roof needed to be replaced and the lawn not having been mowed in quite some time. Upon entering the house, Donna testified that she was confronted with a strong odor and a cluttered mess with piles of various items stacked nearly to the ceiling. The clutter was so dense that it appeared to Donna that there was only one path through the house to Helen Harper's room with access to all other rooms being blocked. After interviewing Helen Harper, Donna took Helen to a doctor who found Helen to be dirty with rashes and dry skin. As a result, Donna recommended that Helen Harper be evaluated for mental capacity.
>
> Helen Harper was evaluated by Dr. Kenneth Carroll, a forensic geriatric psychologist, who prepared a Psychological

Assessment and testified in Court. Dr. Carroll reported that Robert Harper was, at first, resistant to the evaluation but after a brief discussion consented to it. Dr. Carroll, just like Donna Smith, described the home as an awful mess both outside and inside with junk piled to the ceiling. Dr. Carroll observed that Helen is unable to walk and relies on others to move from her wheelchair to her bed. During the evaluation, Helen Harper could not remember when she married, when her husband died or how many children she had. Helen Harper believed she was in an apartment rather than her own home despite remarking that she put up the hallway wallpaper years ago. In addition, Helen Harper was unable to identify her doctor or any health problems and Dr. Carroll testified that Helen Harper knew nothing about her finances. Dr. Carroll reported that Helen Harper was completely isolated but never mistreated by Robert Harper. Based on his interaction with Helen Harper, Dr. Carroll diagnosed Helen Harper with moderate dementia, probably Alzheimer's and recommended that a guardian be appointed for her person and estate to ensure her health, safety and financial security. Dr. Carroll recommended a guardian because he believes that Helen Harper can no longer safely reside in her home due to its disrepair and because Robert has been resistant to assistance and his ability to care for Helen Harper is doubtful.

Charles Harper, Helen Harper's son and Robert's brother, testified that Robert has resided with Helen Harper since 2001 but Charles has not visited Helen Harper in her home since 2014 because Robert would not allow it. Charles testified that, in 2013, Robert discovered that Helen Harper's real estate taxes had not been paid and that Robert as agent under power of attorney for Helen Harper made three withdrawals from Helen Harper's account totaling nearly $70,000.00. Charles also testified that, since Helen Harper was admitted to a nursing home, Charles has been able to visit Helen Harper. Based on his observations and the nursing home reports, Charles testified that Helen Harper's condition improved in the nursing home and, as a result, Charles does not think that Robert should be appointed guardian of Helen Harper.

Robert Harper testified that he has been caring for Helen Harper since 2001 and that he believes he can handle the duties and responsibilities of being Helen Harper's guardian with the assistance of a home health aide. Robert also testified that, while Helen Harper was under his care, he filed for bankruptcy

on behalf of Helen Harper, sold properties owned by Helen Harper in order to be able to pay real estate taxes, and the Fire Department placed a Do Not Enter on the house in which Robert and Helen Harper resided because the clutter was so thick inside that, if a fire were to ignite inside, it would be too dangerous for fire fighters to go inside to fight the blaze. Robert also testified that he does not work and has no income relying, instead, on Helen Harper's social security income of approximately $2,300.00 per month to provide for himself and Helen Harper. To save money, Robert testified that he heats the house with electric space heaters and has done so for about four years.

Jacquelyn Goffney, Esquire, Helen Harper's court-appointed Guardian Ad Litem, addressed the Court and reported that Helen Harper filed for Chapter 13 bankruptcy because she had approximately $260,000.00 of debt. Ms. Goffney also reported that she identified additional problems with Helen Harper Harper's accounts and estate planning. Just as Donna Smith and Dr. Kenneth Carroll reported, Ms. Goffney reported that the house in which Robert and Helen Harper resided smelled awful and contained an obscene amount of clutter.

Helen Harper also addressed the Court and expressed her opinion that Robert Harper takes excellent care of her. Helen Harper knew nothing about her financial situation and expressed a desire to return home because she thinks she can care for herself.

Orphans' Court Opinion, 3/10/16, at 2–4.

Robert raises the following two issues on appeal:

A. Whether the lower court abused its discretion in appointing a guardian ad litem on behalf of Helen Harper over her objection and contrary to evidence?

B. Whether the lower court erred in denying the Appellant's request for an independent evaluation and less restrictive options in violation of her due process rights?

Appellant's Brief at 6.

- 4 -

Our standard of review of the findings of an orphans' court is deferential. *In re Ware*, 814 A.2d 725, 731 (Pa. Super. 2002). When reviewing a decree entered by the orphans' court, "this Court must determine whether the record is free from legal error and the court's factual findings are supported by the evidence." *In re Estate of Devoe*, 74 A.3d 264, 267 (Pa. Super. 2013). "Because the Orphans' Court sits as the fact-finder, it determines the credibility of the witnesses and, on review, we will not reverse its credibility determinations absent an abuse of that discretion." *In re Fiedler*, 132 A.3d 1010, 1018 (Pa. Super. 2016), *appeal denied*, 145 A.3d 166 (Pa. 2016).

A guardian of the person is responsible for all of an incapacitated person's care and custody. *In re Estate of Border*, 68 A.3d 946, 956 (Pa. Super. 2013) (citing 20 Pa.C.S. § 5521). We have long stated that the appointment of a guardian lies within the sound discretion of the trial court. *Estate of Haertsch*, 649 A.2d 719, 720 (Pa. Super. 1994). "Discretion must be exercised on the foundation of reason. An abuse of discretion exists when the trial court has rendered a judgment that is manifestly unreasonable, arbitrary, or capricious, has failed to apply the law, or was motivated by partiality, prejudice, bias, or ill will." *In re Duran*, 769 A.2d 497, 506 (Pa. Super. 2001) (quoting *Harman ex rel. Harman v. Borah*, 756 A.2d 1116, 1123 (Pa. 2000)).

> Pennsylvania law defines a guardian as a person lawfully
> invested with the power, and charged with the duty, of taking

- 5 -

care of the person and/or managing the property and rights of another person, who, for defect of age, understanding or self-control is considered incapable of administering his own affairs. Two classes of guardians have long been recognized at law: (1) guardian of the person being invested with the care of the person of the [incapacitated person], and (2) guardian of the estate being entrusted with the control of the property of the [incapacitated person]. The spheres of authority of a guardian of the person and of a guardian of the estate are distinct and mutually exclusive.

The guardian of the [incapacitated person's] person is the person having primary physical responsibility for the care and custody of the [incapacitated person]. However, natural guardianship confers no inherent right to intermeddle with the property of the [incapacitated person], and the natural guardian has no inherent authority to demand or power to receive, hold or manage the [incapacitated person's] property unless the natural guardian has also been appointed as guardian of the [incapacitated person's] estate.

*Rock v. Pyle*, 720 A.2d 137, 141 (Pa. Super. 1998) (citations omitted).

Robert's first issue asserts that the orphans' court abused its discretion in appointing a GAL on behalf of Helen. Robert challenges COSA's contention that Helen had to be removed from the home due to substantial medical circumstances maintaining "there was no substantial proof." Robert's Brief at 15. He suggests that the testimony of psychologist Dr. Kenneth Carroll, that Helen lived in deplorable conditions, does not "equate[] to incapacity." *Id*.

Robert contends that Helen was removed from the home against her will. Robert's Brief at 16. He urges that Helen's forgetfulness is due merely to her age. *Id*. Robert maintains that Helen was mentally competent "by

clear and convincing evidence," yet he does not cite to anything in the record as support for his assertion. *Id*. at 17.

Robert also avers that the orphans' court shifted the burden of proof to him. Robert's Brief at 17. He suggests that the orphans' court failed to comply with 20 Pa.C.S. § 5512.1, which provides:

> § 5512.1. Determination of incapacity and appointment of guardian
>
> **(a) Determination of incapacity.**--In all cases, the court shall consider and make specific findings of fact concerning:
>
>> (1) The nature of any condition or disability which impairs the individual's capacity to make and communicate decisions.
>>
>> (2) The extent of the individual's capacity to make and communicate decisions.
>>
>> (3) The need for guardianship services, if any, in light of such factors as the availability of family, friends and other supports to assist the individual in making decisions and in light of the existence, if any, of advance directives such as durable powers of attorney or trusts.
>>
>> (4) The type of guardian, limited or plenary, of the person or estate needed based on the nature of any condition or disability and the capacity to make and communicate decisions.
>>
>> (5) The duration of the guardianship.
>>
>> (6) The court shall prefer limited guardianship.

20 Pa.C.S. § 5512.1 (a).

Robert also maintains the orphans' court failed to give consideration to Helen's choice of GAL in contravention of 20 Pa.C.S. § 5511, which provides, in part:

**§ 5511. Petition and hearing; independent evaluation**

\* \* \*

(f) Who may be appointed guardian.--The court may appoint as guardian any qualified individual . . . . **If appropriate**, the court shall give preference to a nominee of the incapacitated person.

20 Pa.C.S. § 5511 (emphasis added). Robert's Brief at 19. Robert submits that "if [Helen] needed a guardian, then, in such event, [he] was the best person to be appointed." Robert's Brief at 20. Robert's argument is conclusory and unsubstantiated by reference to the record.

COSA argues that the issue is waived because Robert failed to include it in his Pa.R.A.P. 1925(b) statement. COSA's Brief at 2. While Robert may not have stated the issue in his appellate brief in the exact terms as presented in the concise statement, it is sufficiently suggested therein. Thus, we decline to find waiver. In the alternative, COSA relies on the orphans' court's explanation and the evidence presented at the November 23, 2015 hearing. COSA's Brief at 2. We rely on the orphans' court's explanation, as well.

> At the November 23, 2015 evidentiary hearing, all parties were given a full and fair opportunity to present their case. Dr. Kenneth Carroll, a forensic geriatric psychologist, testified and recommended a guardian because Helen Harper suffers from moderate dementia, probably Alzheimer's and was not receiving adequate care or support from Robert Harper who was living

- 8 -

with Helen Harper and who contested the Petition on the grounds that a guardian was unnecessary because of his care. Dr. Carroll's diagnosis of moderate dementia, probably Alzheimer's was based on his clinical testing of Helen Harper and his substantive observations such as Helen Harper's inability to walk, inability to remember when her husband died, inability to remember how many children she had, inability to describe her physical and mental condition and her inability to articulate any understanding of her finances. Dr. Carroll's recommendation that a guardian be appointed was based on his perception of Helen Harper's home environment. When Dr. Carroll evaluated Helen Harper at her home, Dr. Carroll noted that the house was an awful mess inside and outside and emitted a displeasing odor. Based on those observations, Dr. Carroll reported that Robert Harper's ability to care for and support Helen Harper is doubtful as Helen Harper was not, at that time, receiving adequate care and support. This evidence of record wholly satisfies the requirement of 20 Pa.C.S. §5518 that the Petitioner provide evidence of incapacity from a qualified individual.

Finding that Helen Harper is an incapacitated person is even more appropriate after considering the factors listed In 20 Pa.C.S. § 5512.1(a) because the lack of adequate care and support for Helen Harper is further supported by the record. Both Donna Smith, the COSA case manager, and Jacquelyn Goffney, Esquire, the Guardian Ad Litem, corroborated Dr. Carroll's report and testimony that Helen Harper's house was malodorous, in a concerning state of disrepair and clogged with junk inside. Robert Harper even testified that, while he and Helen Harper were residing in the house, the Fire Department placed a Do Not Enter [sign] on the house because the clutter was so thick inside that, if a fire were to ignite inside, it would be too dangerous for fire fighters to go inside to fight the blaze. Despite that obvious warning and concern, Robert Harper testified that he heated the home with electric space heaters for the last four years.

The testimony of Charles Harper, Jacquelyn Goffney, Esquire and Robert Harper himself also reveals that Helen Harper's financial situation was in dire straits as a result of Robert Harper's stewardship as agent under power of attorney for Helen Harper over the last few years. Robert Harper failed to pay taxes on several pieces of real estate owned by Helen Harper which required him, as agent, to make about $70,000.00

worth of withdrawals of Helen Harper's funds to make partial payment. To make further payment of previously unpaid real estate taxes, Robert Harper sold real property owned by Helen Harper. Robert Harper also allowed Helen Harper to accrue approximately $260,000.00 of debt resulting in the institution of bankruptcy proceedings. Lastly, Robert Harper testified that he is not employed and has not been employed for some time so, while he and Helen Harper were residing together, Robert Harper was relying on Helen Harper's $2,300.00 per month to support both himself and Helen Harper.

Considering this record as created at the November 23, 2015 evidentiary hearing and recounted above, the Petitioner, COSA, easily satisfied its burden of proving by clear and convincing evidence that Helen Harper is an incapacitated person pursuant to the requirements of 20 Pa.C.S. §§ 5511, 5518 and 5512.1(a). Not only does Helen Harper suffer from moderate dementia, probably Alzheimer's which impacts her cognitively to the point where she cannot remember who her doctor is and what her finances are but the record revealed that Helen Harper also does not have a sufficient support system in place to render her not incapacitated as per the Supreme Court of Pennsylvania's analysis in *In re Peery* [727 A.2d 539 (Pa. 1999)]. As such, there was no less restrictive alternative to guardianship available to the [c]ourt. The [c]ourt, therefore, appointed Jacquelyn Goffney, Esquire and Robert Harper Co-Guardians of the Person of Helen Harper and appointed Jacquelyn Goffney, Esquire and Dana Breslin, Esquire Co-Guardians of the Estate of Helen Harper. Despite the record revealing that the level of care provided by Robert Harper to Helen Harper was deficient, the [c]ourt appointed Robert Harper Co-Guardian of the Person of Helen Harper because it was evident from the record that Robert Harper had great affection for and is devoted to his mother, Helen Harper.

Orphans' Court Opinion, 3/10/16, at 7–9.

Robert also argues that the orphans' court erred in denying his request for an independent evaluation. Robert's Brief at 22. He wholly fails to cite to the record where such denial occurred. In support of his argument, Robert refers to the relevant statute, which provides as follows:

- 10 -

§ 5511. Petition and hearing; independent evaluation

**(a) Resident.**--The court, upon petition and hearing and upon the presentation of clear and convincing evidence, may find a person domiciled in the Commonwealth to be incapacitated and appoint a guardian or guardians of his person or estate. **The petitioner may be any person interested in the alleged incapacitated person's welfare.** The court may dismiss a proceeding where it determines that the proceeding has not been instituted to aid or benefit the alleged incapacitated person or that the petition is incomplete or fails to provide sufficient facts to proceed. . . . In addition, notice of the petition and hearing shall be given in such manner as the court shall direct to all persons residing within the Commonwealth who are *sui juris* and would be entitled to share in the estate of the alleged incapacitated person if he died intestate at that time, to the person or institution providing residential services to the alleged incapacitated person and to such other parties as the court may direct, including other service providers. . . .

20 Pa.C.S. § 5511(a) (second emphasis added). Robert suggests that because "only those persons who are sui juris and would be entitled to share in the alleged incapacitated person's estate are required to be notified of impending incapacitation proceedings," the class of individuals entitled to challenge the adjudication "should be limited to these same intestate heirs and the alleged incapacitated person himself." Robert's Brief at 24. As noted in the emphasis above, the language of the statute itself belies the propriety of such a claim. *See also In re Hyman*, 811 A.2d 605, 607-608 (Pa. Super. 2002) ("Any person interested in the alleged incapacitated person's welfare may petition the court for a judicial determination that the person is indeed incapacitated and for the appointment of a guardian.").

Robert also cites to section (d) of the statute, which provides:

**(d) Independent evaluation.**--The court, upon its own motion or upon petition by the alleged incapacitated person for cause shown, shall order an independent evaluation which shall meet the requirements of section 5518 (relating to evidence of incapacity). The court shall give due consideration to the appointment of an evaluator nominated by the alleged incapacitated person.

20 Pa.C.S. § 5511(d). In his reply brief, Robert references a document he presented at the November 23, 2015 hearing purporting to be Helen's request for an independent evaluation. Robert's Reply Brief at Appendix A; N.T., 11/23/15, at 60. Robert continues in his assertion that medical records did not support Helen's incapacitation and that the orphans' court appointment of a guardian *ad litem* was against the weight of the evidence. Robert's Brief at 27–28.

Once again, we look to the decision of the orphans' court, which found as follows:

> The record overwhelmingly supports a finding that Helen Harper is an incapacitated person who requires the appointment of a guardian of her person and estate. Helen Harper was properly served with notice of the Petition and the hearings in this matter as required by 20 Pa.C.S. § 5511(a). At the initial hearing on November 9, 2015, Robert George, Esquire, counsel for COSA, submitted into evidence an Affidavit of Service which was notarized and signed by Jane Ervin who attested that she had "personally served, read to, explained and left a copy of the CITATION WITH IMPORTANT NOTICE, Preliminary Decree, and accompanying Petition" upon Helen Harper. In light of the absence of Helen Harper at the November 9, 2015 hearing, the significance of the allegations regarding Helen Harper's condition and finances, and John Nilan, Esquire appearing as opposing counsel on behalf of Robert Harper, the [c]ourt appointed Jacquelyn Goffney, Esquire Guardian Ad Litem on behalf of Helen Harper and scheduled this matter for an evidentiary hearing to be held on November 23, 2015. At no point from the moment

the Petition was filed until the appealed Final Decree was signed, did Helen Harper request counsel or an independent evaluation. Instead, the [c]ourt proactively appointed a Guardian Ad Litem for Helen Harper in order to ensure that the rights and best interest of Helen Harper were protected throughout this entire process.

Orphans' Court Opinion, 3/10/16, at 6–7 (footnote omitted).

Here, the evidence presented establishes that Robert has failed to act in the best interests of Helen's person and estate. He has prevented his brother Charles from visiting Helen since May of 2014. N.T., 11/23/15, at 29, 36. COSA presented the testimony of Dr. Carroll, the forensic geriatric psychologist, who prepared a Psychological Assessment dated August 3, 2015, and testified in court regarding Helen's condition. Upon assessing Helen, Dr. Carroll asked Helen to assess her circumstances "and she said there was nothing wrong." N.T., 11/23/15, at 47. "She did not realize she was losing weight . . . and she could not recall whether she had anything to eat that day or the day before." *Id*. Dr. Carroll's report noted that:

All memory functions are impaired, including remote recall. She had difficulty recounting her history. She is unsure when she married, or when her husband died, and she is unsure how many children she has. She is confused about her whereabouts; she does not believe she is in her own home, but in some apartment elsewhere. . . . [S]he is otherwise disoriented to place, and she is completely disoriented to time.

Psychological Assessment, 8/3/15, at 1. Dr. Carroll opined that Helen "has moderate dementia, which seriously limits her ability to recall and integrate information, to assess situations, to consider options, to adapt to change, to make decisions, to have the judgment needed to make plans, and the

- 13 -

initiative to carry them out." *Id*. at 3. Dr. Carroll stated that Helen required "the assistance of a guardian of both her person and her estate." *Id*.

Despite record evidence that Robert provided deficient care to Helen, the orphans' court appointed him as a Co-Guardian of the Person of Helen "because it was evident from the record that Robert Harper had great affection for and is devoted to his mother, Helen Harper." Orphans' Court Opinion, 3/10/16, at 9. The evidence before the orphans' court was sufficient good cause as to why Robert's appointment as the sole guardian of either Helen's person or estate was not appropriate.

Considering the record as a whole, there is support for the orphans' court's conclusion that there existed no less restrictive options available. Moreover, because the orphans' court considered the necessity of an independent co-guardian and articulated a sound evidentiary basis for its decision, we discern no abuse of discretion in the decision of the orphans' court. *Estate of Haertsch*, 649 A.2d 719. Thus, we have no hesitation in affirming the decision of the orphans' court.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 1/5/2017

- 14 -